(No. 30791.—

THE COUNTY OF DU PAGE, Appellee, *vs.* CLARE S. HENDER-
SON *et al.*, Appellants.

*Opinion filed January 19, 1949.*

GEORGE E. WOODS, DONALD L. VETTER, and WEAVER & WEAVER, all of Chicago, for appellants.

LEE E. DANIELS, State's Attorney, (JOHN S. WOODWARD, and CHARLES W. HADLEY, of counsel,) all of Wheaton, for appellee.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

This is a direct appeal from a decree of the circuit court of Du Page County, involving the validity of a zoning ordinance enacted under the authority of the County Zoning Act. The county of Du Page sought to enjoin the

defendants-appellants, Clare S. Henderson and his wife, Elsie, from using their property for a purpose contrary to the ordinance. The answer of appellants admitted such use but alleged the ordinance to be subject to various constitutional objections. The decree enjoined them from so using the property, and this appeal followed.

The board of supervisors zoned the unincorporated areas of the county into seven districts, (1) "E" (Estate), (2) "R" (Residence), (3) "F" (Farming), (4) "B-1" (Business), (5) "B-2" (Business), (6) "I-1" (Industrial) and (7) "I-2" (Industrial). The involved property is within the "F" zone. In that zone the uses permitted under "E" and "R" are also permitted in addition to 22 other uses, one of which is farming and truck gardening.

The basic facts can be summarized very briefly after we describe the territory wherein the properties of appellants and of appellee's witnesses are located, namely Lisle Township, which is a congressional one of 36 sections. In the west part thereof is Naperville, in the east is part of Belmont, the two being connected by U. S. Route 34. Cutting the township north and south is State Route 53. Where the two routes intersect is the unincorporated village of Lisle. Approximately two miles south of Lisle in the southwest quarter of section 23, Route 53 is crossed by an east and west highway known variously as "Good Ridge Road," "Goodrich Road," and "Hobson Road." We shall use the last appellation herein. Extending north from the intersection of the two roads along the east side of Route 53, the land is divided into lots of small acreage for assessment purposes, except for a plot at the intersection devoted to district school purposes. A subdivision covers territory on both sides of Route 53 between section 23 and Lisle. About one and one-half miles west of the intersection, and on the north side of Hobson Road is another subdivision in the southwest quarter of section 22. The testimony of witnesses and the maps in evidence clearly establish the fact that

the township is largely devoted to farming uses. There are exceptions, such as areas adjoining Naperville and Belmont, and around Lisle, zoned for residential purposes. A considerable acreage is devoted to the use of Catholic orders. Small areas zoned for business are interspersed through the township, the closest of such to the intersection of Route 53 and Hobson Road being on the former in section 26. On the west side of Route 53 in section 23 are the abandoned grounds of a defunct golf club on which is a gravel pit of undetermined size and use. Small, but seemingly sufficient, industrial zones are found adjoining Naperville and Belmont, in Lisle, and in section 15.

Insofar as Lisle Township is concerned, the evidence demonstrates a progressive infiltration of people acquiring small acreages in the "F" district for residential purposes. Each instance required the outlay of considerable money for the procurement of the ground, construction of the dwelling and appurtenances. The infiltration is further evidenced by the establishment of the two subdivisions for residential use, both relatively close to the property of the appellants. The one to the north on Route 53 is laid out in 19 blocks containing 371 lots. The one to the west on Hobson Road has eight acreages ranging from 3 to 10 acres each in the part situated in the township. Additionally, there are the acreages of those township residents, living fairly close to defendants, who appeared as witnesses for the appellee. Those witnesses either resided on the lots created for assessment purposes along the east side of Route 53 north of its intersection with Hobson Road, or along the latter road west and east of the intersection.

The appellants said in the lower court, and say here, that the ordinance, insofar as it bears upon them adversely in this instance, contravenes sections 2 and 13 of article II of the constitution of 1870, because it (a) takes their property without just compensation, (b) is unreasonable and arbitrary, and (c) bears no substantial relationship to public

safety, morals or general welfare. It is also charged to be a capricious invasion of their property rights; and, even though the ordinance be held valid, the decree should be reversed and the complaint dismissed for want of equity due to the slight public benefit, if any, as compared to the extreme hardship upon them. There are two other objections we will consider later.

The county zoning ordinance was adopted in 1935. The appellants purchased lot 4 of the assessment division in January, 1941, and erected a dwelling thereon. In that structure, appellant Clare S. Henderson installed machine tools for manufacturing machines under a contract with the army. Because of the war, the manufacturing activity was never challenged as a violation of the ordinance. Subsequently, in 1944, the equipment was moved from the dwelling to a building on the lot and the manufacturing continued. A punch press was installed in a garage on the lot in January, 1945, and was removed therefrom and sold in October of that year when neighbors objected to the noise from its operation. On the north 65 feet of lot 4 the appellants erected a building in the latter part of 1945, and in January, 1946, they installed machinery therein and used the premises and machinery for the processing of ground flat carbon tool steel stock, which they sell to manufacturers. This activity is not predicated upon any government contract. This particular building is about 105 by 41 feet and about 350 feet from the center of Route 53. In October, 1945, the appellant Clare S. Henderson applied to the zoning board of appeals of the county for a variation in zoning, so he could conduct his manufacturing business, subject to certain conditions we need not state. This application was denied.

The appellants also owned another tract of five acres north of and adjacent to lot 4. Thereon they built a new residence, and a son-in-law did likewise. In March, 1946, they sold all of lot 4, except the north 65 feet containing

the factory building, to Norbert Rennecke for residential purposes. The appellants gave further recognition of the zoning ordinance, and of the fact they were restricted by it in respect to the manufacturing venture, when application was made for a permit to erect the building on the 65-foot strip of lot 4. The application was for the construction of a barn, 104 by 40 feet, to be used to "house stock, poultry and miscellaneous storage." If any such use was made of the structure, it was merely a token use, for it was almost immediately used to house the manufacturing venture. The type of construction used belies the professed use to which it presumably was to be put.

The police power of the State is that power required to be exercised in order to effectually discharge within the scope of the constitutional limitations its paramount obligation to promote and protect the public health, safety, morals, comfort and general welfare of the people. The enactment into law of "An Act in Relation to County Zoning" in 1935 (Ill. Rev. Stat. 1947, chap. 34, par. 152i *et seq.*) was a delegation of that power to the counties to be exercised by them for the accomplishment of those purposes in order to benefit county residents outside of incorporated cities and villages.

The owner of property does possess the right under the constitution of the State to use his property as he so desires; and this includes the engaging in any common occupation of life, for such is a part of his right to life, liberty, property and the pursuit of happiness. It is one of the natural rights guaranteed to him by the constitution. (Const. 1870, art. II, sec. 1; *Frazer* v. *Shelton,* 320 Ill. 253.) A person's business, profession or occupation is "property" within sections 1 and 2 of article II relating to due process of law and the right to liberty and the pursuit of happiness. (*Lasdon* v. *Hallihan,* 377 Ill. 187.) This individual right is not unqualified. It does have to yield to the higher and greater right of the best interests

of the people. (*Phipps* v. *City of Chicago,* 339 Ill. 315.) This holds true though a proper exercise of the police power brings about a material financial loss, for that cannot stand in the way of public welfare, the latter not being susceptible to being impeded or thwarted by a private loss which is incident to the exercise of that power. (*Hadacheck* v. *Sebastian,* 239 U. S. 394; 60 L. ed. 356.) The justification for a zoning ordinance reducing the value of some individual rights is the greater benefit accruing to the public as a whole; and this includes the limitation of the potential value of a particular parcel of property. (*Neef* v. *City of Springfield,* 380 Ill. 275.) This court has no right to question legislative policy. When the legislature has determined what is a proper exercise of the police power, this court does have the right to determine whether the means employed in a particular matter have a real and substantial relation to the public health, comfort, morals, safety or welfare, or are unreasonable and arbitrary. (*State Bank and Trust Co.* v. *Village of Wilmette,* 358 Ill. 311; *2700 Irving Park Building Corp.* v. *City of Chicago,* 395 Ill. 138.) In the use of his property according to his desires, the owner must not endanger or threaten the safety, health, comfort or general welfare of the people. (*McCray* v. *City of Chicago,* 292 Ill. 60; *People ex rel. Younger* v. *City of Chicago,* 280 Ill. 576.) When dealing with zoning ordinances in relation to the exercise of the police power, the public welfare is the dominant consideration. However, the imposed restrictions must bear a substantial relation to the public health, safety, morals or general welfare. (*Forbes* v. *Hubbard,* 348 Ill. 166.) A zoning ordinance passed in the exercise of a delegated police power is clothed with a presumption in favor of its validity. The party attacking it as an unreasonable and oppressive exercise of that power has the burden of showing affirmatively and clearly its unreasonableness. This court will not hold such ordinance unreasonable where there

is room for a fair difference of opinion on the question. *Village of Western Springs* v. *Bernhagen,* 326 Ill. 100; *Reschke* v. *Village of Winnetka,* 363 Ill. 478; *People ex rel. Kirby* v. *City of Rockford,* 363 Ill. 531; *Evanston Best & Co.* v. *Goodman,* 369 Ill. 207.

*Euclid* v. *Ambler Realty Co.* 272 U. S. 365, 71 L. ed. 303, involved a zoning ordinance in Euclid, which is a suburban village adjacent to Cleveland, Ohio. The court, speaking through Mr. Justice Sutherland, observed that, until recent years, "* * * urban life was comparatively simple; but with the great increase and concentration of population, problems have developed, and are constantly developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. Such regulations are sustained, under the complex conditions of our day, for reason analogous to those which justify traffic regulations, which before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable. And in this there is no inconsistency, for while the meaning of constitutional guarantees never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world, it is impossible that it should be otherwise." The thought of this statement clearly applies to the County Zoning Act.

On the basis of what is in the record regarding the origin of the county zoning ordinance, we conclude it was enacted only after a thorough survey by specialists in such matters of the relevant conditions in the county outside incorporated cities and villages. We are judicially aware

Du Page County is just west of Cook County and the city of Chicago, and there has been for some years past a constantly accelerated migration westward, from the two places, of people seeking less congested and more comfortable living conditions; that industry is to a degree and for various reasons decentralizing, and business generally is seeking escape from the troublesome burdens which seem to be an end product of concentrations of people. All that has operated, and is operating, to bring about a change in the basic characteristics of the unincorporated areas of Du Page County. Country areas, especially those close to metropolitan areas, are feeling the impact of changing conditions of life, just as Mr. Justice Sutherland has observed the urban communities experienced a change in their ways of life. Under such circumstances, the imposition of new or additional restrictions on the way of life in country areas is inevitable.·

The ordinance is presumed to be valid, and the burden of showing it unreasonable and oppressive, as applied to appellants, rested upon them. Their showing had to be clear and conclusive. All that they have shown is that they purchased the property knowing it was subject to the zoning ordinance restriction against carrying on a manufacturing business thereon. The violation of the ordinance is admitted. They have not shown that the particular restriction, as applied to them, is not a proper exercise of the police power in that it does not have a substantial relation to the general welfare of the people about them. If the property were located in an area which was static, as to conditions changing it from a rural to a suburban manner of life, the case for the restriction would be weak indeed, and the case against it stronger. The area is not static. In fact, it is kinetic with change to an extent which, at the least, leaves the question of the necessity of the ordinance restriction open to a fair difference of opinion. Under those circumstances, this court will leave the matter as it

finds it—with a difference of opinion concerning the reasonableness of a particular ordinance, and will refuse to overthrow the considered findings of an impartial body which was presumably well equipped to decide the various issues involved. *Village of Western Springs* v. *Bernhagen,* 326 Ill. 100; *Village of Euclid* v. *Ambler Realty Co.* 272 U. S. 365, 71 L. ed. 303.

The worth of the defense offered by the appellants must depend upon the evidentiary value of the circumstances of their situation with respect to the ordinance. The fact the ordinance permitted a large number of uses within . the district, which the appellants deemed more detrimental to the people and their property, can neither diminish nor enlarge their defense, for those other uses are not theirs. The fact that nonpermissive uses are carried on by others contrary to the ordinance neither fortifies nor weakens the case of appellants, but each alleged violation of the ordinance is a complete case within itself and must stand or fall upon the facts and circumstances of that case alone. The appellants charge in this court that the classification of their property as nonindustrial in the ordinance amounts to a capricious invasion and an unreasonable invasion of their property rights. The presumption of the validity of that classification must be overcome by proof made by defendants which is clear and convincing. (*City of Springfield* v. *Vancil,* 398 Ill. 575.) The defendants have not supplied the proof required. The uses permitted and forbidden in the "F" district were the result of the considered judgment of the zoning commission and the board of supervisors, all based upon a survey and analysis of the area involved by competent persons. The fact such judgment may lead to an honest difference of opinion, which leaves the subject open for debate, does not warrant this court intruding in the role of a zoning commission. All questions concerning the wisdom or desirability of particular restrictions in a zoning ordinance must be addressed to the legislative body

specifically charged with determining them. *Evanston Best & Co.* v. *Goodman*, 369 Ill. 207.

The appellants say if the ordinance is valid the decree should be reversed and the complaint dismissed for want of equity due to the slight benefit to the public, if any, as compared with the extreme hardship on the appellants. This is based upon the belief the evidence in the record clearly supports the contention. What extreme hardship, so-called, have the appellants suffered? Only this, they can no longer follow at the stated place a business activity they started in known violation of the prohibition contained in the ordinance, and they must, in the future, conduct that activity elsewhere, if they are to conduct it at all. In *Welton* v. *Hamilton*, 344 Ill. 82, this court determined the invalidity of amended section 3 of the amended Zoning Act of 1921, (Laws of 1923, p. 268,) for a certain ordinance conferred questionable powers on a zoning board of appeals. In the course of our decision, we said, "The mere fact that the owner of a particular parcel of property in a certain district, acquired long after it was classified under the zoning ordinance, can make more money out of it if permitted to disregard the ordinance instead of required to comply with it, is neither a difficulty nor a hardship authorizing the board of appeals to permit such owner to disregard the ordinance so far as it interferes with his plans for a more profitable use." In the *Welton case* the ordinance had not been violated. The board of appeals in effect simply sanctioned a variation on the theory an unlawful hardship would otherwise be placed on the property owner. In this case the appellants knowingly violated the ordinance, and the board of appeals refused to allow further violation. The distinction between the two situations simply emphasizes the unique applicability of the above holding to this contention.

The benefit to the public because of the termination of the nonzoned activity of appellants is material. The evi-

dence demonstrated that the business appellants conducted appreciably lowered property values in that portion of Lisle Township surrounding the appellants' property. Under those circumstances, we must hold it is not inequitable to compel them to cease violating the ordinance.

A claimed discrepancy between the ordinance and the map of the zoned territory is alleged to be sufficient to warrant the dismissal of the complaint for want of equity. This is not advanced in support of an assigned error relied upon for reversal, and was not briefed and argued in the main brief of appellants. It appeared for the first time in their reply brief, and the appellee had no day in court to answer the point. The court cannot, under those circumstances, entertain the matter.

It is alleged that section 3 of the County Zoning Act is an unconstitutional delegation of power by the legislature to an administrative body, and that paragraph 6 of section 17 of the ordinance, which is based on section 3, authorizing the board of appeals to vary or modify the zoning regulations, is invalid. Section 3 of the County Zoning Act is almost identical with section 3 of the City Zoning Act held unconstitutional in *Welton* v. *Hamilton*, 344 Ill. 82. The point the appellants endeavor to make is that if paragraph 6 of section 17 of the ordinance is void, the appellants should not be charged with unlawfully continuing the business after the denial of their application to the zoning board of appeals for a variation from the ordinance whereby their property could be used for manufacturing. We see no merit in that argument, for if the board lacked the power to grant the variation, any denial of such would not excuse past, present or continued violation of the zoning ordinance. Assuming, though not deciding, that section 3 of the County Zoning Act is invalid, it would not necessarily follow that the whole act was invalid. (*Speroni* v. *Board of Appeals*, 368 Ill. 568.) A decision on whether section 3 of the act and paragraph 6 of

section 17 of the ordinance are invalid would not affect in any way our decision on the balance of the act or ordinance. As a matter of fact, the validity of sections 1 and 2 of the County Zoning Act is not in issue here. No allegation or contention is made questioning the delegation of legislative power to the counties under the County Zoning Act.

The appellee especially asked that appellants be enjoined from using their premises for manufacturing, and also asked for any general relief the court should see fit to bestow. The court decreed the specific relief, and for general relief enjoined appellants "from in any way violating the zoning ordinance * * * in reference to the use of the * * * premises." They complain of the blanket restriction of the general relief granted, claiming it is not supported by any allegation of the complaint and proof of any other actual or contemplated violation.

A prayer for general relief is sufficient to warrant any decree supported by the facts alleged in the complaint. (*Harmony Way Bridge Co.* v. *Leathers,* 353 Ill. 378.) Those facts, of course, must be proved by the evidence. (*Churchill* v. *Marr,* 300 Ill. 302; *Seely* v. *Board of Education,* 315 Ill. 186.) A prayer for general relief is an appeal to the chancellor to evaluate the allegations and proof, and in the exercise of his sound judgment and discretion to grant such other relief as the equities of the case require. The complaint alleged a knowing violation of the ordinance, a deliberate endeavor to circumvent the prohibitions thereof by a misrepresentation in regard to contemplated use of the factory building. The proof supported those allegations, and the findings of the decree followed the allegations and proof. The chancellor evidently concluded such disregard of the ordinance by appellants, under the proof shown, was enough evidence to warrant the general relief granted, to insure observance of the ordinance in the future. We believe this general relief was warranted under the circumstances. Courts of equity are not bound by formulas

or restrained by any limitation that tends to trammel the free and just exercise of discretion. (*Keystone Driller Co.* 290 U.S. 240, 78 L. ed. 293.) Equity courts may, and often do, go much further in giving and withholding relief in furtherance of the public interest than they are accustomed to go when only private interests are involved. *Virginian R. Co.* v. *System Federation No. 40,* 300 U.S. 515, 81 L. ed. 789.

The circuit court of Du Page County did not err in entering the decree, and that decree is affirmed in all respects.

*Decree affirmed.*