Thomas Baird, Plaintiff-Appellant, v. Board of Zoning Appeals of City of Kankakee, Illinois; Allen Cooper, as Building Inspector of City of Kankakee, Illinois, and Kankakee Water Company, Defendants-Appellees.

Gen. No. 10,580.

 Opinion filed May 20, 1952.
Released for publication June 6, 1952.

BUTZ, BLANKE & STITH, of Kankakee, for appellant.

CHARLES W. KURTZ, of Kankakee, for appellees.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This case comes to this court on appeal from the circuit court of Kankakee county. Thomas Baird is plaintiff-appellant. The Board of Zoning Appeals of the City of Kankakee, Illinois, Allen Cooper, Building Inspector of the City, and the Kankakee Water Company, a corporation, are appellees.

It is undisputed that since 1886 the Kankakee Water Company has operated a water plant on its land for the purpose of furnishing water to the residents of the City of Kankakee and customers in adjoining towns and areas outside the city limits of Kankakee; that the Kankakee River flows generally west through the city paralleling Cobb Boulevard, which is approximately 200 feet north of the north bank of the river; that the original and present water works is about 250 feet west of the appellant Baird's property; that in 1923 Baird purchased his property, which faces Cobb Boulevard, for a home; that the original plant of the Kan-

kakee Water Company, hereinafter referred to as the water company, is on lands described as "Lot 2, Block 18, (etc.), of the Cobb Estates lands in Kankakee, Illinois"; that Lot 3 of the same subdivision is a vacant lot and lies between the original water plant and the Baird home; that in 1940 the water company purchased Lot 3; that in 1931 the City of Kankakee adopted its first zoning ordinance, in and by which Lots 2 and 3, above described, and considerable other property in the area including Baird's home and the water plant, were zoned and restricted as "single-family dwelling—Class A district." On January 16, 1950, the city enacted an amended comprehensive and detailed zoning ordinance. By this ordinance there was no change in the classification of the area involved herein, it still being restricted to single-family dwellings. The appellant Baird, relying upon the 1931 and 1950 zoning ordinances, made valuable improvements to his home in the amount of about $20,000.

The following evidence also is undisputed by all parties: prior to 1942 the water company had a daily average pumpage of approximately four million gallons per day; from 1944 to 1950 numerous new industries located in the Kankakee area but outside its corporate limits, and the water company has been supplying them with water; in 1950 the water company furnished these industries several million gallons per day, and will be called upon in the future to furnish other industries located outside the corporate limits with large quantities of water; they also furnish water in the amount of about four million gallons per month to the Village of Bradley, one mile north of Kankakee, and approximately a million gallons per day to both the Kankakee State Hospital and the Manteno State Hospital, located outside of the corporate limits; due to this increased use of water, the water company in 1950 had an average daily pumpage of from seven

million gallons to ten million gallons per day; the Kankakee and Manteno State Hospitals and other industrial users in and out of the city had been purchasing their water from the water company from 1932 to 1940; the present clarifying basins are only adequate for about six and a half million gallons per day; about forty per cent of the daily pumpage is pumped outside of the corporate limits but the industries located outside of the city employ several thousand people who live both inside and outside of the city.

On October 23, 1950, the water company filed an application with the building inspector of the city for permission to build an additional clarifying basin on Lots 2 and 3 above described. The proposed basin will have a concrete wall eight feet above the surface of the ground, and will be one hundred twenty-five feet by ninety-two feet. The west side of the basin will be located within thirteen feet of the west side of the Baird home, and will extend from the north line of Baird's front porch south along his entire house and continue on his west lot line for a distance of about a hundred feet. The water company stated in its application that its increased sale of water made it necessary to construct the basin in order to properly treat the water to safeguard the health and welfare of the people of the City of Kankakee, and that no other location would be feasible and practical or economical from an engineering point of view. The cost of the clarifying basin was to be approximately $152,000. The building inspector for the city refused to give the water company a permit on the grounds that it was a variance of the zoning ordinance.

From the decision of the building inspector, the water company appealed to the Board of Zoning Appeals of the City, hereinafter referred to as the Appeal Board, as provided by the 1950 zoning ordinance. After a hearing before the Appeal Board, evidence being

heard on behalf of the objectors and on behalf of the water company, the Appeal Board varied the ordinance and granted the permit of the water company to build the clarifying basin, and directed the building inspector to issue the permit.

The Appeal Board, at the time they rendered their decision, found in substance: that the pumpage of the water company had increased to a peak of more than ten million gallons per day; that the State Board of Health had said that for the public health and welfare of the inhabitants of the city and surrounding territory, the facilities of the water company should be increased by the construction of additional clarifying basins; that the most reasonable, convenient, and economical plan for the construction of the basins on the premises of the water company was the plan stated in their petition; that the construction of the basin would not impair the adequate supply of light and air to adjoining property or unreasonably diminish or impair established property values within the surrounding area, or in other respect impair the public health, comfort, or welfare of the inhabitants of the city; that to deny the petition would amount to a practical confiscation of property of the petitioner without due process of law. The objector, Thomas Baird, appellant herein, appealed from this order to the circuit court of Kankakee county, in conformity with the statute.

The circuit court reviewed the proceedings and affirmed the decision of the Board of Appeals, and dismissed appellant Baird's complaint for review.

It is admitted by the parties that in order for the water company to obtain the permit, it must obtain a variance under the terms of the ordinance. The 1950 ordinance stems from the power given cities to pass and vary zoning ordinances as contained in Ill. Rev.

Stat. 1951, article 73, chap. 24, subsections 1 to 11 [pars. 73–1 to 73–11] [Jones Ill. Stats. Ann. 21.2122, 21.2131(a)].

At the hearing before the Appeal Board, the water company introduced as witnesses three engineers, as well as the local manager of the water company. The substance of their testimony, which is largely undisputed, was that the additional clarifying basin was necessary to produce pure and safe water for commercial and domestic uses. They also testified that the location of the improvement was the best location for its use by the water company; that to place it elsewhere on the premises owned by the water company would be impractical, uneconomical, and that the other part of their premises which might have been used was being preserved for future uses; that the type of basin proposed followed approved engineering practices, and would utilize the land most efficiently. They all testified it was necessary to construct the basin in order to deliver adequate pure water to their customers.

Clifford H. Williams and James G. Ginger, real estate brokers, testified in substance for appellant and other objectors that the location of the clarifying basin, to be at least eight feet high, within thirteen feet of the Baird property, extending from the front porch of the Baird property south at least a hundred feet, would not only substantially diminish and depreciate the existing value of the Baird property, but of other property in the immediate area; that the residential area in question was one of the best within the city. The witness Ginger also testified that the wall would cut off light and air to the Baird dwelling and this also would devaluate the property.

Dr. George E. Irwin, Kankakee physician, one of the objectors before the zoning commission, testified that he knew the values of property in the area, and that in his opinion the construction of the basin would

substantially impair the existing values of real estate in the neighborhood.

William MacKay, another objector, who was an executive of the Florence Stove Company, testified that the proposed construction would substantially impair the established values in the vicinity. He also testified that the basin could be as economically constructed on another portion of the petitioner's property and thus not affect Baird's property.

Thomas Baird, the appellant, testified as follows: he purchased the residence in 1923; during the intervening years he has made substantial improvements to the property—recently in the amount of about $20,000; he is a heating contractor, with many years experience as to property values; he thought the zoning code would protect his property from further encroachment by the water company. He further stated, "I am not putting up an objection to this thing from the standpoint of damages so much that our peace of living there is threatened. If this thing were built, it would nullify to a great extent the efforts we have made for a home up to this time, and that is all I have to say." He further testified that in his opinion the construction would unreasonably diminish and impair the established property values in the area.

John A. Fulkman testified before the zoning appeal commission on behalf of appellant and the other objectors. He testified that he is a consulting engineer, has had many years experience as a water engineer, is familiar with the Kankakee water plant, and that there is no valid reason why the proposed basin could not be constructed immediately south of the existing basin and the Kankakee River. He also testified that a different type of basin, which would be equally efficient and would cause less damage to the Baird property, could be constructed.

165

The Kankakee Zoning Ordinance involved here by article XVI, sections 1-3 inclusive, creates a Board of Appeals and provides that this Board shall hear and decide appeals from any order or decision of the building inspector. Article XVI, section 4, subsection 3 of the zoning ordinance provides as follows:

"3. To permit the erection and use of a building or the use of premises in any "A," "B," "C," or "D" Dwelling Districts for a public service corporation for public utility purposes which the Board deems reasonably necessary for the public convenience or welfare."

Article XVI, section 4, subsection 7 provides in part:

"In considering all appeals and all proposed variations to this Ordinance the Board shall, before making any variation from the Ordinance in a specific case, first determine that the proposed variation will not impair an adequate supply of light and air to adjacent property or unreasonably increase the congestion in public streets, or increase the danger of fire or endanger the public safety, or *unreasonably* diminish or impair established property values within the surrounding area, or in any other respect impair the public health, safety, comfort, morals or welfare of the inhabitants of the City of Kankakee. . . ." (Underlining not in quote.)

██ Appellant urges that the installation of the clarifying basin is not reasonably necessary for the public convenience or welfare of the residents of the City of Kankakee, as required by the provisions of subsection 3, above mentioned, of the zoning ordinance. He contends that the record discloses that the purpose of the proposed improvement is to permit the water company to increase its pumpage for the purpose of serving its customers outside the corporate limits of the city, that this is not a corporate purpose, and therefore the variance should not have been permitted. The answer to this is that while it is true that part of the needs for the basin arise from the use of water to cus-

tomers outside of the corporate limits, nevertheless the evidence in the record discloses that at least part of the use was needed by the people of the city. The Appeal Board found that it was necessary for the welfare of the citizens of Kankakee. The findings and order in question permitting the variance was the judgment of the legislative department of the City of Kankakee, with which we cannot interfere unless it is manifestly against the weight of the evidence. When the question of reasonableness is even fairly debatable, the courts will not interfere with the legislative judgment. (*People v. Gill,* 389 Ill. 394.)

██ The court will not constitute itself a zoning commission, and all questions of the wisdom of the variation permitted is a function of the legislative body, and its findings will not be disturbed, although there may be grounds for legitimate differences of opinion. (*Downey v. Grimshaw,* 410 Ill. 21.) Regardless of this, we do not believe that so narrow a construction should be placed upon the powers of a public utility to furnish water that it would be prevented from obtaining land and erecting thereon a clarifying basin so that it might better serve the city and the surrounding territory with water. To permit this construction could lead to impractical and serious consequences, and might in many instances prevent the public utility from better serving the city from which it obtained its franchise. The water company here was required under its certificate from the Illinois State Commerce Commission to serve the City of Kankakee and adjoining territory with water, a commodity necessary to the welfare of the people of this area. No doubt many of the people employed in the outside area are employed by the industries served. The welfare of the city required that these industries be served, not only for their profit, but for the welfare of the citizens of Kankakee. The findings of the Appeal Board under the law and

167

the facts is not subject to the criticisms levelled against it. Thus this contention of appellant has no merit.

Appellant further urges that the variance should not be permitted because the evidence in the record discloses that the clarifying basin could just as practically and economically be constructed on other premises in the vicinity of the water plant, and thus prevent the damage to the Baird home. He further urges that the damage to the Baird home could be minimized by the erection of a different type of plant, which would not need to be so close to the Baird home. Therefore, he contends that the order of the Appeal Board is unreasonable and arbitrary. There is a contrariety of opinion on this question, as disclosed by the testimony in the record. The engineers for the water company testified that the location in question was the best location, both from an economical and practical point of view. They also testified that in their judgment this type of clarifying basin was the best and most practical type to be erected to suit the purposes of the water company. These facts are disputed by testimony of appellant's witnesses.

██ There was and is ground for legitimate difference of opinion as to these facts, and as above announced, this being true, the findings of the Appeal Board and the circuit court, where there is legitimate difference of opinion, will not be disturbed. (*Downey v. Grimshaw,* 410 Ill. 21; *Illinois Bell Telephone Co. v. Fox,* 402 Ill. 617.) The facts in the *Illinois Bell Telephone* case are quite parallel to many of the facts here. In that case the telephone company, by eminent domain proceedings, obtained title to a tract of land in the City of Chicago, for the purpose of erecting thereon a telephone exchange. The lot in question was restricted under the zoning ordinance of the City of Chicago for residence purposes. The telephone company sought to obtain a variance of the ordinance to permit the erection of the building. The zoning board of ap-

peals denied the telephone company's petition, and the cause was brought into the circuit court of Cook county by certiorari. Defendant property owners contended that the erection of the telephone exchange building at the proposed site was not necessary for public convenience, and therefore under the terms of this ordinance the variation could not be permitted, because there was evidence in the record showing that there were other places in the area where the exchange building could be located with less damage to the adjoining property owners, and without requiring a variance of the ordinance. The court held that the word "necessary" means any convenient or expedient location. The court said on page 631 of the opinion:

". . . If plaintiff must show that the site selected is absolutely necessary and indispensable for the rendition of telephone service, then section 24 is both unworkable and absurd. No particular site within the entire telephone district is absolutely necessary, and the same objection as here advanced could be made no matter what location was selected. Under the circumstances, we are impelled to hold that any reasonably convenient or expedient location is a necessary location, within the contemplation of the ordinance. In addition, the uncontroverted evidence in the record discloses that a new telephone exchange is needed to meet the increasing demand for service, that the proposed site is at the exact wire center of the telephone district and that the wire center is the most practical, convenient and economical location for the new exchange. . . ."

The court affirmed the order of the circuit court directing that the necessary permit be given to the telephone company, and holding that the variance should have been permitted under the terms of the zoning ordinance.

In *Rector v. Board of Appeals,* 342 Ill. App. 51, the Interstate Water Company sought to obtain a variance

of the zoning ordinance of the City of Danville, for the purpose of building a water tower, in an area restricted by the ordinance for residential purposes. The city council and zoning board of appeals granted the permit to build the tower, and permitted a variance of the ordinance. On certiorari the county court set aside the order of the council and the zoning appeal board, and the water company appealed. The board, after a full hearing, made findings that the erection of the water tower was needed because of inadequate water pressure, and that a variance of the zoning ordinance was necessary for the health, public safety, and general welfare of the city. The Appellate Court held that the judgment of the legislative department, the city council and the board of appeals, should not be disturbed, when the question of reasonableness was fairly debatable, and that neither the board nor the council had acted capriciously or abused their discretion in permitting the variance. The court held that the trial court erred in entering the order appealed from, and quashed the writ of certiorari, and affirmed the record of the board of appeals. The Appellate Court said: "In Forbes v. Hubbard, 348 Ill. 166, the court said: 'The public welfare is a dominating consideration in cases of this character. Where it appears that the restrictions of a zoning ordinance bear substantial relation to the public health, safety, morals or general welfare, such a consideration is determinative regardless of the fact that individuals may suffer an invasion of their property. This has been often recognized by this and other courts, and the rule need not be laid again here.' " The rules of law announced in the *Illinois Bell Telephone* case and the *Rector* case are applicable and pertinent to the instant case.

Appellant also contends that the Appeal Board had no right to grant the variance, even if it deemed the erection of the basin was reasonably necessary for the

public convenience or welfare, as provided in article XVI, section 4, subsection 3 of the ordinance, because it says that the evidence introduced shows conclusively that the proposed variation will impair an adequate supply of light and air to the Baird property, and will unreasonably diminish or impair established property values within the surrounding area, in contravention of the provisions of article XVI, section 4, subsection 3 of the 1950 zoning ordinance.

Appellant's witnesses on the question of damages were two real estate men and other witnesses who resided in the area, as well as appellant Baird. Their testimony disclosed that the erection of the clarifying basin would "substantially diminish" and "depreciate" the value of the Baird property, and the other homes in the area. None of them testified as to how much the properties would be *unreasonably* diminished or impaired. Under subsection 7 of the ordinance it must appear that the value of the property would be unreasonably diminished or impaired to prevent a variance in the ordinance. The burden of proof was upon appellant to establish this. (*Du Page County v. Henderson,* 402 Ill. 179.) What is "substantial," "substantially," "diminution," and "depreciation of existing values," the words used by the witnesses, are conclusions of the witnesses and not statements of ultimate facts. They are not synonymous with "unreasonable." What they mean cannot be ascertained, as none of them gave any evidence as to what the value of the property was before and what it would be after the construction of the improvement. If testimony of values had been adduced by the appellant, then it could be determined whether or not the building of the clarifying basin would depreciate the property so much as to make it unreasonable. The burden of proof was upon the appellant to establish this, and in our opinion he failed to do so. The Appeal Board

171

found otherwise, and their findings in this state of the record are binding upon us and cannot be said to be manifestly against the weight of the evidence. We find there is no merit to this contention of appellant. We think it is necessary and reasonable for the public convenience and welfare of the people of Kankakee that this clarifying basin be constructed. It is unfortunate that Mr. Baird will be hurt by this improvement. On the other hand it is imperative that public service companies furnish adequate service for the people. Congestion of people in urban life requires zoning ordinances and variances from the strict letter of the same for the welfare and happiness of the people. Individual rights and precious liberties are often unjustly restricted, both in one's way of life and financially, by police power regulations. Public welfare for the good of all is of first importance, and for the public good our complex society at times demands numerous regulations, deprivations of liberty, and property damage without compensation. In the use of property according to his wishes, the owner must not endanger or threaten the safety, health, or welfare of the people. His use of his property is subservient to the welfare of the people. (*Du Page County v. Henderson,* 402 Ill. 179.) The facts in the instant case are illustrative of this. We believe that the Appeal Board had the power under the law and the provisions of the zoning ordinance in question to permit the variance of the ordinance, and authorize the construction of the clarifying basin in question, and that the circuit court properly approved the same.

The order and the decree of the circuit court should be and are affirmed.

*Judgment affirmed.*