County of Will, Plaintiff-Appellant, v. Cecil H. Stanfill et al., Defendants-Appellees.

Gen. No. 10,839.

Second District.

September 27, 1955.

Released for publication October 17, 1955.

CROW, J., dissenting.

Frank H. Masters, Jr., and Charles H. Blim, both of Joliet, for appellant.

Oscar R. Laraway, and Robert E. Higgins, both of Joliet, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

County of Will filed its complaint in the Circuit Court of Will County against the defendants, Cecil H.

Stanfill, Juanita B. Stanfill, Jimmie C. Cutler, Rena S. Bernhardt, Charles A. Lane, Dona A. Lane, and Ralph Sanchez. Subsequently the suit was dismissed as to the defendant Cutler. The prayer of the complaint was that the several defendants be restrained from further violating the provisions of the Will County Zoning Ordinance by the maintenance of a dwelling upon the several parcels of real estate described in the complaint and that the defendants be required to remove said dwellings from the described property.

The complaint consisted of five counts, count one being directed against the defendants, Cecil H. and Juanita B. Stanfill; count two was directed against defendant, Cutler; count three was directed against defendant, Bernhardt; count four was directed against defendants, Charles A. and Dona A. Lane; and count five was directed against the defendant, Ralph Sanchez. The several counts are substantially the same other than the property described therein and the names of the defendants.

Count one set forth the applicable portions of the Will County Zoning Ordinance and alleged that since the enactment thereof, the defendants Stanfill had erected a portable dwelling unit, commonly known as a house trailer, on certain described real estate, and that under the terms and provisions of the Will County Zoning Ordinance this property of the defendants had been classified as an R–2 Residential District and charged that the defendants, in erecting said dwelling on said property, did so in violation of the provisions of the Will County Zoning Ordinance in that the described property contained less than one-sixth of an acre (7,260 square feet), as required by Section 13 of the ordinance. It was then alleged that the maintenance of said dwelling upon this property constitutes a continuing violation by the defendants of the zoning ordinance.

By their answers, the defendants admitted that under the provisions of the Will County Zoning Ordinance defendants' properties were classified as an R–2 Residential District but denied that they had erected a portable dwelling unit upon the described property and averred that the zoning ordinance was not legally enacted and is invalid because the zoning map referred to in the ordinance does not legally constitute a part of the zoning ordinance, and that said zoning ordinance contains no legal map of the zoning districts or classifications sought to be created therein, and that the classification given to their property was arbitrary, unjust, oppressive, capricious, and unreasonable and, therefore, illegal and void, being repugnant to the due process clauses of the Constitutions of Illinois and of the United States of America.

After a hearing, the chancellor entered a decree dismissing the complaint on the ground that house trailers were not mentioned in the zoning ordinance and that the zoning map was not properly identified as being a part of the Will County Zoning Ordinance. To reverse this decree, plaintiff appeals.

The record discloses that a comprehensive zoning ordinance for Will County was adopted by its Board of Supervisors on September 9, 1949, which was subsequently, on August 28, 1951, revised. Section 1 is entitled "Definitions," and among the words defined is "erected," which is defined to mean, "set up, raised, built or moved into place." Section 4 of that ordinance is entitled "Zoning Districts" and, in part, provides: "(a) CLASSIFICATION: For the purposes of this ordinance, all the land in Will County lying outside the limits of cities, villages and incorporated towns is hereby divided and classified into the following districts, listed in order from the highest, (Residential) 'R1,' to the lowest, (Unrestricted) 'U.'
"1. R–1 District (Residential)
"2. R–2 District (Sparsely Occupied Residential)

"3.  R–3 District (Residential Apartments and Multiple Family Residences)

"4.  F District (Farming or Agriculture)

"5.  B–1 District (Business)

"6.  B–2 District (Business, Taverns)

"7.  B–3 District (Business, Package Liquor Stores and Amusements)

"8.  B–4 District (Business, Tourist Camps, Cabins, Trailer Camps)

"9.  I–1 District (Light Industry)

"10.  I–2 District (Heavy Industry)

"11.  U District (Unrestricted)

"(b)  ZONING MAPS: Such land and the classification thereof shall be as shown on maps designated 'The Zoning Maps of Will County, Illinois.' These maps shall be numbered consecutively and there shall be at least one map for each township, each map to be signed and dated by the County Clerk upon adoption. These zoning maps, and all notations, colors, dimensions, references, and symbols shown thereon, pertaining to such districts, shall be as much a part of this ordinance as if fully described herein, and shall be filed as a part of the ordinance with the County Clerk. Such maps, or other maps certified as showing the districts created and approved, shall be available for public reference in the offices of the County Clerk and the County Zoning Enforcing Officer. Later alterations of any of these maps, adopted by amendment as hereafter provided, shall be similarly signed, dated, filed and made available for public reference.

"(c)  ADDITIONAL AREAS: Any addition to the area regulated by this ordinance as shown on the zoning maps, resulting from disconnection by municipalities or otherwise, shall be automatically placed in the R–1 (Residential) District until otherwise classified by amendment."

The evidence is that in conjunction with the zoning ordinance there was filed in the office of the County

Clerk of Will County twenty-five zoning maps drawn to scale. One of these maps is marked "Page 12, Manhattan Twp. T. 34 N, R. 11 E, 3rd P. M. Will County, Illinois. Filed, Sep. 9, 1947, Joseph H. Hartley, Co. Clerk, Will Co. Ill." The sections are numbered one to thirty-six inclusive. The C. M. St. P. & P. R. R. and Wabash R. R. are indicated as traversing the township; Jackson and Prairie Creeks, the Old Indian Boundary Line and Five Mile, Grove School, Paton, Manhattan Center, Pfundstein, Barr, Mud Creek and Geuther Schools are located; also, the Village of Manhattan, which is marked "Not Subject to County Zoning"; Fairview and Manhattan Terrace Subdivisions are indicated, as well as paved and secondary highways. At the bottom of the map there is a map key, with lines, symbols and rectangular spaces, some shaded under the words "Land Uses," indicating how the township is zoned, viz.: Residential, R–2; Business I, B–1; Business 2, B–2; Light Industry, L–I; Unrestricted, U; Residential, R–1; Agriculture, F; Forest Preserve; Heavy Industry, I–2; Joliet Arsenal and Water Features. There also appears at the side of the map the words, "Additional zones created or modified by Ordinance of the County Board, Aug. 28, 1951," and beneath these words are four shaded or solid color rectangles marked "Multiple Residence," "Tavern," "Package Store," and "Trailer Camp," respectively.

Joseph H. Hartley testified that he was the County Clerk of Will County and that this zoning map of Manhattan Township was brought to his office by Mr. Robinson, a member of the zoning board on September 9th, 1947, and was marked filed by him and is the only zoning map of Manhattan Township, Will County, Illinois, in his office. This map heretofore referred to has been certified to this court and an examination thereof discloses that the properties of the several defendants were classified therein as Residential, R–2.

57

Myrtle Montgomery testified that she was the Deputy County Clerk of Will County and, as such, acted as Clerk of the County Board of Supervisors and that she first saw the map in question at the meeting of the County Board of Supervisors on the day the ordinance was adopted, September 9, 1947; that this map was one of a series covering all of the townships in Will County; that the maps were on file in the County Clerk's office and that when people came into the County Clerk's office to see the zoning maps, one of the maps which would be given to such persons for examination would be the map certified to this court as the zoning map of Manhattan Township.

The evidence is that the defendant, Bernhardt, owns a tract of land 25 feet by 100 feet upon which a house trailer is located which is occupied by the defendant, Sanchez, and his family. The defendants, Charles A. Lane and Dona Lane, own a tract of land 50 feet square upon which a house trailer was moved in July 1953, and Mr. and Mrs. Lane occupy this trailer as their home. The defendants, Cecil H. and Juanita B. Stanfill, own a tract of land 25 feet by 50 feet upon which they moved their house trailer in June 1953, and since that time they have occupied the trailer as their home. These several trailers are on wheels and each is connected with sewer, water and electricity. The several tracts of land, which they occupy, are portions of lots in Fairview, which is a subdivision adjoining the Village of Manhattan and is along Route 52, as the same runs in a northwesterly direction from the Village of Manhattan. This subdivision is unincorporated and is a sparsely built-up residence subdivision. It contains 83 lots, 5 of which are of irregular shape and the other 78 have a frontage of 50 feet and vary in depth from 125 feet to 165 feet. In addition to these house trailers, there are 15 houses in this subdivision, all but one of which face Route 52. All of the unimproved lots and portions of lots not occupied by house trailers are in

58

asparagus and blue grass or devoted to agricultural purposes.

The zoning ordinance which forms the basis of this action was adopted by the Board of Supervisors of Will County pursuant to the provisions of the County Zoning Act of 1935 (Ill. Rev. Stats. 1953, ch. 34, sec. 152i et seq. [Jones Ill. Stats. Ann. 33.190(1) et seq.]). Section 152o of that Act [Ill. Rev. Stats. 1953, ch. 34, § 152o; Jones Ill. Stats. Ann. 33.190(7)] provides that in case any building or structure is erected or maintained or used in violation of any County Zoning Ordinance, the proper authorities of the county may institute any appropriate proceeding in equity to prevent such unlawful use, and to restrain, correct or abate such violation.

Subparagraph (b) of section 4 of the Zoning Ordinance as above set forth provides, among other things, that the classification of the land of the defendants shall be shown on a map designated as a zoning map of Will County, which map shall be signed and dated by the County Clerk upon the adoption of the ordinance. It is the contention of counsel for appellees that the zoning map of Manhattan Township offered and admitted in evidence upon the hearing is not legally a part of the Zoning Ordinance because (1) it was not designated as a zoning map of Will County; (2) it was not signed by the County Clerk and (3) it bore no designation identifying it as one of the zoning maps of the county. There is no merit in this contention. The evidence is that this Zoning Ordinance was adopted by the Board of Supervisors on September 9, 1947, after a survey committee, appointed by the board, together with R. R. Robinson, an employee of the county, had spent the summers of 1945, 1946 and 1947 driving over the county and mapping the location of every house, business place and other data, and among the places visited and meetings held was the Town Hall at the Village of Manhattan. At the time the ordinance was

59

adopted, there were no trailers located on the premises involved in this proceeding.

This map of Manhattan Township does not bear a legend designating it as a zoning map of Manhattan Township, as the ordinance provides, but an examination of it shows that the words "Manhattan Twp. T. 34 N, R. 11 E, 3rd P. M. Will County, Illinois" appear thereon as does also the words "Land Uses." It was filed by the County Clerk and his name and file mark appear thereon. The Deputy County Clerk, who served as Clerk of the Board of Supervisors at the time this ordinance was adopted, testified she first saw this map on September 9, 1947, at the meeting of the Board of Supervisors that day; that it is one of a series of maps of the several townships of the county which were filed in the clerk's office in conjunction with the Zoning Ordinance of Will County; that these maps have remained in the County Clerk's Office ever since, are known as the Will County zoning maps and were filed with the Zoning Ordinance. On cross-examination, the Deputy Clerk testified that the ordinance referred to certain maps and that the maps she was testifying about and identified were the maps referred to· in the ordinance and that she knows this to be true "because they are the only maps we have. They are kept up to date showing the changes. They are on a shelf in the County Clerk's office where they can be examined by anyone who is interested." A casual examination of this map discloses that it is a zoning map of Manhattan Township, Will County, Illinois. It bears words and markings so indicating. It bears the file marking of the County Clerk with his name and date. It came into the office of the County Clerk by the hands of the Deputy County Clerk, who received it in her capacity as Clerk of the Board of Supervisors ·at the same time and in conjunction with the Zoning Ordinance.

From a consideration of the map itself and the testimony as found in this record, the·only reasonable

conclusion to be drawn therefrom is that this map of Manhattan Township is a part of the Will County Zoning Ordinance. The facts in County of Winnebago v. Niman, 397 Ill. 37, cited and relied upon by counsel for appellees, are so different from the facts in the instant case that it is of little help to a correct decision of this suit. In the Niman case, the court found there was no map in existence which portrayed the territory where the defendants' property lay; that the evidence was in irreconcilable conflict as to whether the map which was offered as allegedly covering the defendants' property had ever been present at the meeting of the Board of County Supervisors at the time the Zoning Ordinance was adopted and that there was no substantial evidence in that case that the map had ever been filed in the office of the County Clerk of Winnebago County. In the instant case defendants' properties are located in Manhattan Township and the map of Manhattan Township, which we hold was a zoning map of that township and a part of the County Zoning Ordinance, shows that defendants' properties were classified as being in a Residential, R–2, District.

■■■■■ In McQuillin's Municipal Corporations (3rd Ed.), Vol. 8, pages 472–473, the general rule in respect to defects and irregularities in the enactment or amendment of zoning ordinances is stated as follows: "Generally, methods set out in zoning statutes must be substantially, if not strictly, followed in the enactment or amendment of zoning ordinances or resolutions. Furthermore, a municipal legislative body must substantially follow the regulations it has itself established relative to zoning. It cannot deviate from existing regulations or make exceptions therefrom on behalf of individuals. However, certain procedural irregularities, such as failure of filing or the like, not clouding the legislative intention, do not affect the validity of a zoning ordinance or regulation." In De Lano v. City of Tulsa, 26 F.2d 640, 645, it was held that

61

the failure to file a zoning ordinance with the proper officer was a procedural irregularity which would not affect the validity of the ordinance.

The Zoning Ordinance in the instant case required the zoning maps to be signed and dated by the County Clerk upon the adoption of the Zoning Ordinance and required that the zoning maps be filed as part of the ordinance by the County Clerk. The evidence discloses that the maps were received by the clerk as a part of the Zoning Ordinance when he received the Zoning Ordinance. He thereupon placed or caused to be placed thereon these words and figures; viz.: "Filed, Sep. 9, 1947, Joseph H. Hartley, Co. Clerk, Will County, Illinois." This was a substantial compliance with the provisions of the ordinance, and it clearly appears from the land use map of Manhattan Township, which was offered and admitted in evidence, and forms the basis of this action, that the property of defendants involved in this proceeding was classified therein as "R-2 (Sparsely Occupied Residential)." This legislative intention is not clouded by the absence of the personal signature or words of designation omitted by the County Clerk.

█ By Section 4 of the Will County Zoning Ordinance, an R-1 District is described as being residential and an R-2 District as being sparsely occupied residential, and trailer camps are confined to a B-4 or some lesser district. The word "erected" as used in Section 13 of the Zoning Ordinance is defined in Section 1 thereof as follows: "Erected: Set-up, raised, built or moved into place." This definition would clearly bring a trailer within the meaning of "erected."

█ It is next insisted by counsel for appellees that the application of the provisions of the Zoning Ordinance to the premises of appellees, classifying them as Residential R-2, is not conclusive; that such classification is an arbitrary, capricious and unreasonable one and that this court should so find. In support of

62

this contention, counsel cite Johnson v. Village of Villa Park, 370 Ill. 272. In that case the owners of certain property in the Village of Villa Park sought an injunction restraining the Village from enforcing certain provisions of a Zoning Ordinance which prohibited the owners from operating an undertaking establishment on the premises in question located at the northwest corner of a block 377 feet long, 127 feet of which was zoned for business uses and 250 feet for "Class B. Residential" purposes. The ordinance set forth the uses to which property in this classification could be put to. In commenting on this, the court said that the ordinance attempted to define what it called a "Class B. Residential" district, but in fact designated something quite different and held that the attempted classification was purely capricious and bore no relationship to the public welfare. The facts in the instant case are in no sense analogous to those in the Villa Park case and there is nothing held in that case that is determinative of the issues presented by this record.

In County of Du Page v. Henderson, 402 Ill. 179, the Supreme Court said (p. 188): "The appellants charge in this court that the classification of their property as nonindustrial in the ordinance amounts to a capricious invasion and an unreasonable invasion of their property rights. The presumption of the validity of that classification must be overcome by proof made by defendants which is clear and convincing. (City of Springfield v. Vancil, 398 Ill. 575.) The defendants have not supplied the proof required. The uses permitted and forbidden in the 'F' district were the result of the considered judgment of the zoning commission and the board of supervisors, all based upon a survey and analysis of the area involved by competent persons. The fact such judgment may lead to an honest difference of opinion, which leaves the subject open for debate, does not warrant this court intruding in the role of a zoning commission. All questions concerning

the wisdom or desirability of particular restrictions in a zoning ordinance must be addressed to the legislative body specifically charged with determining them. Evanston Best & Co. v. Goodman, 369 Ill. 207."

Counsel further argue that, under Section 6 of the Zoning Ordinance, which provides that until duly reclassified by the Zoning Authorities, R–2 Districts may continue to be used for all agricultural purposes except that horses, mules, cattle, sheep, goats, swine, poultry or other animals, such as commercial kennels for dogs or foxes, may not be housed, stabled or kenneled closer than fifty feet from any residence other than that of the owner or user of the property, the lands of the defendants could be used for farming with its domestic animals, including cows, sheep, pigs and horses, with its attendant unsanitary condition, but could not be used as a family dwelling, and insist that this shows the classification of their property to be arbitrary and unreasonable. Defendants overlook that the use of such land for farming purposes could only be made until the lands were reclassified by the Zoning Authorities, which, of course, might be done at any time. We do not believe that Section 6 results in an arbitrary and unreasonable classification of defendants' property.

The decree of the Circuit Court of Will County is reversed, and this case is remanded to that court with directions to grant plaintiff the relief prayed.

Reversed and remanded with directions.

EOVALDI, J., concurs.

CROW, J., dissents.