(No. 36903.)

CAMBONI'S, INC., Appellant, *vs.* THE COUNTY OF DU PAGE, Appellee.

*Opinion filed Nov. 30, 1962.—Rehearing denied Jan. 28, 1963.*

HOUSE and KLINGBIEL, JJ., dissenting.

EDGAR J. ELLIOTT, of Wheaton, for appellant.

WILLIAM J. BAUER, State's Attorney, of Wheaton, (ANTHONY M. PECCARELLI, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

In this case we are called upon to determine the validity of the zoning ordinance of Du Page County as applied to the property of the plaintiff, Camboni's, Inc., a corporation. The circuit court of Du Page County sustained the ordinance and certified that the public interest required a direct appeal to this court. (Ill. Rev. Stat. 1961, chap. 110, par. 75(1)(c).) The plaintiff has appealed.

The property in question is a tract of 66 acres located on the north side of U.S. Highway 34 in Naperville township, about 1½ miles southwest of the city of Naperville and about 4 miles east of the city of Aurora. Like the surrounding land, it is presently being used for agricultural purposes, but it is zoned "M-2", a heavy industrial use classification. The plaintiff's position is that the zoning ordinance is invalid insofar as it prevents its use for a "trailer park." Under the ordinance a trailer park is designated as a special use, which may be permitted only in areas classified for "B-4" uses, a commercial classification apparently designed to accommodate what are described as "highway oriented" uses. The plaintiff's application for a rezoning of the property to "B-4" use, and for a special use permit under the new classification, was denied.

A north-south track of the Elgin, Joliet, and Eastern Railroad, a belt-line serving industry in the Chicago area, is located about 1000 feet west of the plaintiff's property. About a mile to the north is the main east-west line of the Chicago, Burlington and Quincy Railroad. Another mile to the north are the east-west Tollway and the right of way of the Chicago, Aurora and Elgin Railroad. Two strips of land in the township are classified M-2. They are located on each side of the rights of way of the Elgin, Joliet and Eastern and the Chicago, Burlington and Quincy railroads. These two industrial strips intersect about a mile north of the plaintiff's property, which is located at the eastern edge of the strip that extends along the east side of the Elgin, Joliet and Eastern right of way.

The county zoning ordinance under attack was enacted in 1957. The plaintiff bought its land on July 30, 1960, for $1250 per acre, with the intention of applying for rezoning to allow its use as a trailer park. All of the witnesses were in substantial agreement that in May of 1961, when the case was tried, that land was worth $2500 per acre for M-2 industrial uses. One witness for the plaintiff, however, testi-

fied that it was worth $10,000 per acre if it could be used for a trailer park. This witness had never bought or sold land for trailer-park purposes, and he apparently based his valuation upon what he had heard about the sale of an un-identified and undescribed tract of land in Cook County for use as a trailer park. He also testified that the presence of a trailer park on the property in question would increase the value of the land within a radius of ½ a mile. On behalf of the defendant and intervening property owners there was testimony that a trailer park on the plaintiff's property would depreciate by 30 per cent the value of the adjacent property to the east, which is zoned for R-3 residence uses.

The plaintiff contends that the practical effect of the zoning ordinance is to exclude trailer parks from Du Page County, and that the ordinance is therefore invalid because it prohibits a legitimate business. This contention is based upon the provision of the ordinance which permits trailer parks only as special uses in the B-4 commercial area, and upon the factual assumption that there is insufficient land in the B-4 classification which could be used for trailer parks. The record shows that there are six existing trailer camps in the unincorporated portion of the county, three of which are nonconforming uses. It does not show how many trailer camps are located in the incorporated municipalities in the county, nor does it show that there is a shortage of vacant land which is zoned for B-4 use. Because the factual assumption upon which the plaintiff rests its contention has not been established, it is not necessary to consider what the legal consequences might be if no additional land was avail-able for use as a trailer park.

Similarly, the plaintiff's suggestion that a trailer park cannot be classified as a special use because it is not incom-patible with other residential uses is without support in the record. Although the plaintiff introduced the testimony of a planning and zoning expert, it made no effort to establish, by his testimony or otherwise, the proposition now asserted

in this court. Nowhere in his testimony did the plaintiff's expert discuss the characteristics of a trailer park. Indeed, throughout his testimony he refrained from expressing any opinion as to the desirability, from a zoning or a planning point of view, of permitting a trailer park upon the plaintiff's property.

The same observation is applicable to the contention that the entire M-2 industrial classification of the ordinance is arbitrary because it permits, in addition to customary industrial uses, airports and sewage treatment plants, as well as junk yards "provided they are contained within completely enclosed buildings or screened by a solid wall of uniformly painted fence at least 12 feet high." Here, too, there is nothing in the record which would suggest that there is impropriety in permitting these uses in a manufacturing area.

The significant contention that the plaintiff raises is that while a comprehensive plan could appropriately designate its land for industrial use, the restrictions of a zoning ordinance cannot validly be applied to that land under the conditions shown in this record. The plaintiff's zoning expert took this position. He pointed out that of approximately six square miles zoned for manufacturing uses in the township, only ½ a square mile. is presently so used. While he conceded that the land in question had characteristics suitable for industrial use by reason of its proximity to the highway and to the freight lines of the Elgin, Joliet and Eastern Railroad, he was of the opinion that only the area lying to the north of the plaintiff's property, closer to the intersection of the two railroad lines, should presently be zoned for manufacturing uses. "The remainder of the area," he said, "should be in a residential classification as a holding area to see whether the people in that area would want to develop it in residential or some more restrictive classification."

His concept of premature zoning was expressed in these

terms: "When I say premature, we should not zone it manufacturing in advance of the development of sewers, the power facilities, truck terminals, and all of the facilities that go with a manufacturing development." As to the plaintiff's property he felt that "when other industry comes in and all of the utilities and facilities that go with an industrial area, that then if the zoning is M-2, you would be able to consider it suitable" for industrial uses.

This court has not adopted that position. On the contrary, like most other courts, it has recognized the propriety of zoning with a view to orderly future development. (See, e.g., *Mercer Lumber Cos.* v. *Village of Glencoe,* 390 Ill. 138, 145; *County of Du Page* v. *Henderson,* 402 Ill. 179.) Nevertheless, the problems that arise in connection with the zoning of areas as yet undeveloped are troublesome, and they have proved to be troublesome wherever they have arisen. (See, e.g., *Zahn* v. *Board of Public Works of Los Angeles,* 274 U.S. 325, 71 L. ed. 1074; *Arverne Bay Constr. Co.* v. *Thatcher,* (278 N.Y. 222), 15 N.E.2d 587; *Gust* v. *Township of Canton,* (342 Mich., 436), 70 N.W.2d 772, *Vickers* v. *Township Committee,* (37 N.J. 232,) 181 A. 2d 129; Reps., The Zoning of Undeveloped Areas, 3 Syracuse Law Rev. 292.) They involve a balancing of the interests of a single owner, whose property can not be unduly depreciated or deprived of all value by a zoning ordinance, against the interests of the community and of other property owners in the orderly future development of the area in question.

Vital to the adjustment of these interests is an appraisal of the rate of anticipated development. This consideration is reflected in those opinions of this court which have pointed out that attention must be given to "the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property." (*La Salle National Bank of Chicago* v. *County of Cook,* 12 Ill.2d 40, 47.) The population of Du

Page County was 103,000 in 1940, 154,000 in 1950, and 313,000 in 1960. The defendant's planning and zoning expert testified that this growth was very slow in contrast with the anticipated doubling of the population of the county in the next ten years.

After careful consideration we are of the opinion that the trial court correctly sustained the validity of the ordinance. It is conceded that the property has characteristics well adapted to industrial development. It is located between two expanding municipalities and it lies in the path of what was described as a "population explosion." The plaintiff can not be said to have been damaged financially by the present zoning, for the value of its property, for manufacturing purposes, had doubled within less than a year from the date of its purchase. And from the testimony the trial judge could have concluded that its use as a trailer park would substantially impair the value of the property to the east, which is zoned for residential purposes, and would also diminish the area available for development as an industrial park.

Under these circumstances, what was said in *County of Du Page* v. *Henderson*, 402 Ill. 179, 187-8, is peculiarly appropriate: "The ordinance is presumed to be valid, and the burden of showing it unreasonable and oppressive, as applied to appellants, rested upon them. Their showing had to be clear and conclusive. All that they have shown is that they purchased the property knowing it was subject to the zoning ordinance restriction against carrying on a manufacturing business thereon. * * * They have not shown that the particular restriction, as applied to them, is not a proper exercise of the police power in that it does not have a substantial relation to the general welfare of the people about them. If the property were located in an area which was static, as to conditions changing it from a rural to a suburban manner of life, the case for the restriction would be weak indeed, and the case against it stronger. The area

is not static. In fact, it is kinetic with change to an extent which, at the least, leaves the question of the necessity of the ordinance restriction open to a fair difference of opinion. Under those circumstances, this court will leave the matter as it finds it—with a difference of opinion concerning the reasonableness of a particular ordinance, and will refuse to overthrow the considered findings of an impartial body which was presumably well equipped to decide the various issues involved. *Village of Western Springs* v. *Bernhagen,* 326 Ill. 100; *Village of Euclid* v. *Ambler Realty Co.* 272 U.S. 365, 71 L. ed. 303."

The decree of the circuit court of Du Page County is affirmed.

*Decree affirmed.*

Mr. JUSTICE HOUSE, dissenting:

The validity of special use procedure has again been upheld by the majority in this case and in *Ward* v. *Village of Skokie, ante,* p. 415. The only difference between the two cases is that in the *Ward* case motels were not a permitted use in any zoning district except by special permit, while here trailer parks are a permitted use in a "B-4" (commercial) district, but only by special permit.

For the reasons stated in Mr. Justice Klingbiel's special concurrence in the *Ward* case (in which I have joined) and my dissent in *Kotrich* v. *County of Du Page,* 19 Ill.2d 181, I urge the court to fully re-examine this question and strike down special use technique unless, or until, it is given legislative sanction and proper standards are fixed for its application.

While we are naturally reluctant to overturn precedent, we should not hesitate to do so where a position previously taken is untenable. In my opinion the *Kotrich* case and *Hartung* v. *Village of Skokie,* 22 Ill.2d 485, fall within that category. Undoubtedly, the very uniqueness of the use (a private recreation center for neighboring families) pre-

sented in *Kotrich* prompted the adoption of the majority opinion without giving sufficient thought to its implications and overtones. The full impact of the attendant evils of special use procedure now appears when ordinances apply the technique to such usual businesses as a motel (*Ward* case) and restaurant (*Hartung* case), and a trailer park in this case. The door is gradually being opened to *ad hoc* determinations which may well destroy the very vitals of zoning. By blindly following these cases we only compound the error. Nor should we be impressed by the fact that a large number of municipalities have included special use procedures in their ordinances. They adopted them in the face of a total absence of statutory authority and without guides or rules for the granting of special use. They did so at their own peril.

Mr. JUSTICE KLINGBIEL joins in this dissent.