ARVERNE BAY CONSTRUCTION COMPANY, Appellant, *v.*
EDWIN H. THATCHER, as Commissioner of Buildings
of the Borough of Brooklyn, City of New York et al.,
Respondents.

Argued April 20, 1938; decided May 24, 1938.

*John P. McGrath* for appellant. The restriction to residental use is confiscatory, arbitrary, unreasonable and void as to plaintiff's property. (*Buchanan* v. *Warley,* 245 U. S. 60; *Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393; *Municipal Gas Co.* v. *Public Service Com.,* 225 N. Y. 89; *Sundlun* v. *Zoning Board of Review,* 50 R. I. 108; *Matter of Eaton* v. *Sweeny,* 257 N. Y. 176; *Dowsey* v. *Village of Kensington,* 257 N. Y. 221; *Cordts* v. *Hutton Co.,* 146 Misc. Rep. 10; 241 App. Div. 648; 266 N. Y. 399.) The restriction bears no substantial relation to public health, safety, morals or general welfare and is beyond the power of public authority to impose and is, therefore, unconstitutional and void. (*Nectow* v. *City of Cambridge,* 277 U. S. 183; *Village of Euclid* v. *Ambler Realty Co.,* 272

U. S. 365; *Sundlun* v. *Zoning Board of Review*, 50 R. I. 108; *Dowsey* v. *Village of Kensington*, 257 N. Y. 221; *Zahn* v. *Board of Public Works*, 274 U. S. 325; *City of Providence* v. *Stephens*, 47 R. I. 391; *Mayer* v. *Turk*, 129 Atl. Rep. 512.) The constitutional questions raised by this action are unaffected by the certiorari proceeding conducted by the appellant. (*Dowsey* v. *Village of Kensington*, 257 N. Y. 221; *Matter of Levy* v. *Board of Standards & Appeals*, 267 N. Y. 347; *Donahue* v. *New York Life Ins. Co.*, 259 N. Y. 98; *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304; *House* v. *Lockwood*, 137 N. Y. 259; *Barber* v. *Kendall*, 158 N. Y. 401,)

*William C. Chanler, Corporation Counsel* (*Paxton Blair* and *Francis J. Bloustein* of counsel), for respondents. The Board of Estimate and Apportionment, having spent $5,000,000 in developing Linden boulevard, acted rightly in taking steps to protect the investment by preserving the boulevard from ruination through the devotion of abutting lands to uses which are tolerated in unrestricted districts. (*Zahn* v. *Board of Public Works*, 195 Cal. 497; 274 U. S. 325; *Pritz* v. *Messer*, 112 Ohio St. 628; *West Bros. Brick Co.* v. *City of Alexandria*, 169 Va. 271.) The affirmance of the order sustaining the action of the Board of Standards and Appeals in denying a variance under section 21 of the Building Zone Resolution is strong, if not conclusive, evidence that no violation of appellant's constitutional rights has occurred. (*People ex rel. Arverne Bay Constr. Co.* v. *Murdock*, 271 N. Y. 631; *Woolsey* v. *Best*, 299 U. S. 1.) If an applicant felt aggrieved by a use district regulation, and felt that his grievance was of such severity as to amount to a violation of constitutional rights, then the time to say so was in the petition to the Board. (*People ex rel. Sheldon* v. *Board of Appeals*, 234 N. Y. 484; *People ex rel. Arseekay Syndicate, Inc.*, v. *Murdock*, 265 N. Y. 158; *Matter of Mayberg* v. *Murdock*, 248 App. Div. 703; 272 N. Y. 571; *Matter of Gelkom Realty Corp.* v. *Board of Standards &*

*Appeals*, 251 App. Div. 708; 275 N. Y. 650; *People ex rel. David Holding Corp.* v. *Murdock*, 264 N. Y. 609; *Central High School Athletic Assn.* v. *City of Grand Rapids*, 274 Mich. 147.)

LEHMAN, J. The plaintiff is the owner of a plot of vacant land on the northerly side of Linden boulevard in the borough of Brooklyn. Until 1928 the district in which the property is situated was classified as an " unrestricted " zone, under the Building Zone Resolution of the city of New York (New York Code of Ordinances, Appendix B). Then, by amendment of the ordinance and the " Use District Map," the district was placed in a residence zone. The plaintiff, claiming that its property could not be used properly or profitably for any purpose permitted in a residence zone and that, in consequence, the zoning ordinance imposed unnecessary hardship upon it, applied to the Board of Standards and Appeals, under section 21 of the Building Zone Resolution, for a variance which would permit the use of the premises for a gasoline service station. The application was denied, and, upon review in certiorari proceedings, the courts sustained the determination of the board. (*People ex rel. Arverne Bay Construction Co.* v. *Murdock*, 247 App. Div. 889; affd., 271 N. Y. 631.)

Defeated in its attempt to obtain permission to put its property to a profitable use, the plaintiff has brought this action to secure an adjudication that the restrictions placed upon the use of its property by the zoning ordinance result in deprivation of its property without due process of law and that, in so far as the ordinance affects its property, the ordinance violates the provisions of the Constitution of the United States and the Constitution of the State of New York. In this action it demands as a right what has been refused to it as a favor. The defendant challenges the right of the plaintiff to urge the invalidity of the zoning ordinance after denial of an

application for a variance made under its provisions. At the outset, and before considering the merits of the plaintiff's cause of action, we must dispose of this challenge to the plaintiff's right to maintain this action.

The application for the favor of a variance is an appeal primarily to the discretion of the board, conferred upon it by the ordinance. It necessarily assumes the validity of the ordinance. A successful attack upon the validity of the ordinance destroys the foundation of any discretion conferred by the statute. To invoke the discretion of the board, an owner of property must show " unnecessary hardship." When that has been shown the board may grant " a special privilege " denied to others differently situated. (*People ex rel. Fordham M. R. Church* v. *Walsh*, 244 N. Y. 280.) Without such " special privilege," strict enforcement of a general rule restricting the use of all property within a district might work such hardship upon a particular owner that in effect it would deprive the owner of his property without compensation. The power to grant a variation might give such flexibility to the rule or its application that a property owner can, without violation of its terms, make reasonable use of his property. (*Dowsey* v. *Village of Kensington*, 257 N. Y. 221.)

The rule established by that case is this: To sustain an attack upon the validity of the ordinance an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions upon his property preclude its use for any purpose to which it is reasonably adapted. Thus it must appear either that the ordinance does not authorize a variation of the general rule which would admit of such use or that such variation has been refused by the administrative board in the exercise of a discretion which the ordinance confers upon it. Only two possible questions can be presented for decision upon an application for a variation: *First*, does the ordinance confer upon the administrative board power to grant the variation

which is asked; *second,* if the board has power to grant it, does the exercise of a wise discretion call for the use of the power in the particular case? The issue whether without such variation the strict enforcement of the general rule would work such hardship as to constitute the taking of property without due process of law is not directly presented upon an application for a variation, and it follows that the denial of the application cannot be a binding adjudication that, without such variation, enforcement of the general rule will not deprive the applicant of his property without due process of law. True, where the board in the exercise of its discretion denies an application for a variation which it has *power* to grant, argument may be made that a refusal to exercise such discretion can, logically, be based only upon a finding that even without such variation there is no unnecessary hardship, and that the enforcement of the general rule would not deprive the owner of his property or preclude a reasonable use of the property. Then the same considerations which induced the board to deny the application might constrain the court to decide that the statute is valid. None the less, the questions presented would not be identical and the denial of the application for a variance would not be a conclusive adjudication of the validity of the statute; and that would be true even though the courts had, upon review by certiorari, sustained the determination of the board. We proceed, then, to a consideration of the merits of the plaintiff's claim, and in our discussion it will appear that in this case the denial of the application for a variation may have been based upon considerations which cannot affect the judgment of the court in passing upon the validity of the ordinance in so far as it applies to the plaintiff's property.

The amendment to the zoning ordinance, about which complaint is made, changed from an unrestricted zone to a residential district the property abutting on Linden boulevard for a distance of four miles, with the exception

of a small section at a railroad crossing. The district is almost undeveloped. There had been no building construction in that area for many years prior to the amendment. The chairman of the building zone commission which drafted the zoning ordinance, testifying as an expert witness for the defendant, described the district as in a " transition state from the farms as I knew them thirty and forty years ago south of this location." There are some old buildings used for non-conforming purposes, left from the days when the district was used for farming. There are only three buildings in Linden boulevard in a distance of about a mile. One of these buildings is a cow stable and a second building is used as an office in connection with the dairy business conducted there. A gasoline station erected on that boulevard would, it is plain, not adversely affect the health, morals, safety or general welfare of the people who now live in that neighborhood. Justification, if any, for the ordinance restricting the use of the property on Linden boulevard to residential purposes must be found in the control over future development which will result from such restrictions.

Without zoning restrictions, the self-interest of the individual property owners will almost inevitably dictate the form of the development of the district. The plaintiff claims, and has conclusively shown at the trial, that at no time since the amendment of the zoning resolution could its property be profitably used for residential purposes. The expert witness for the city, to whose testimony we have already referred and whose qualifications are universally recognized, admits that such a residential improvement would, even now after the lapse of ten years, be " premature." The property, then, must for the present remain unimproved and unproductive, a source of expense to the owner, or must be put to some non-conforming use. In a district otherwise well adapted for residences a gasoline station or other non-conforming use of property may render neighboring property less

desirable for use as a private residence. The development of a district for residential purposes might best serve the interests of the city as a whole and, in the end, might perhaps prove the most profitable use of the property within such district. A majority of the property owners might conceivably be content to bear the burden of taxes and other carrying charges upon unimproved land in order to reap profit in the future from the development of the land for residential purposes. They could not safely do so without reasonable assurance that the district will remain adapted for residence use and will not be spoilt for such purpose by the intrusion of structures used for less desirable purposes. The zoning ordinance is calculated to provide such assurance to property owners in the district and to constrain the property owners to develop their land in manner which in the future will prove of benefit to the city. Such considerations have induced the Appellate Division to hold that the ordinance is valid.

There is little room for disagreement with the general rules and tests set forth in the opinion of the Appellate Division. The difficulty arises in the application of such rules and tests to the particular facts in this case. We are not disposed to define the police power of the State so narrowly that it would exclude reasonable restrictions placed upon the use of property in order to aid the development of new districts in accordance with plans calculated to advance the public welfare of the city in the future. We have said that "the need for vision of the future in the governance of cities has not lessened with the years. The dweller within the gates, even more than the stranger from afar, will pay the price of blindness." (*Hesse* v. *Rath*, 249 N. Y. 436, 438.) We have, indeed, recognized that long-time planning for zoning purposes may be a valid exercise of the police power, but at the same time we have pointed out that the power is not unlimited. "We are not required to say that a merely

temporary restraint of beneficial enjoyment is unlawful where the interference is necessary to promote the ultimate good either of the municipality as a whole or of the immediate neighborhood. Such problems will have to be solved when they arise. If we assume that the restraint may be permitted, the interference must be not unreasonable, but on the contrary must be kept within the limits of necessity." (*People ex rel. St. Albans-Springfield Corp.* v. *Connell,* 257 N. Y. 73, 83.) The problem presented upon this appeal is whether or not the zoning ordinance as applied to the plaintiff's property is unreasonable.

Findings of the trial judge, sustained by evidence presented by the plaintiff, establish that, in the vicinity of the plaintiff's premises, the city operates an incinerator which " gives off offensive fumes and odors which permeate plaintiff's premises." About 1,200 or 1,500 feet from the plaintiff's land, " a trunk sewer carrying both storm and sanitary sewage empties into an open creek  *  *  *. The said creek runs to the south of plaintiff's premises and gives off nauseating odors which permeate the said property." The trial judge further found that other conditions exist which, it is plain, render the property entirely unfit, at present, for any conforming use. Though the defendant urges that the conditions are not as bad as the plaintiff's witnesses have pictured, yet as the Appellate Division has said: " It must be conceded, upon the undisputed facts in this case, that this property cannot, presently or in the immediate future, be profitably used for residential purposes." (253 App. Div. 285, 286.)

We may assume that the zoning ordinance is the product of far-sighted planning calculated to promote the general welfare of the city at some future time. If the State or the city, acting by delegation from the State, had plenary power to pass laws calculated to promote the general welfare, then the validity of the ordinance

might be sustained; for "we have nothing to do with the question of the wisdom or good policy of municipal ordinances." (*Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 393.) (The legislative power of the State is, however, not plenary, but is limited by the Constitution of the United States and by the Constitution of the State. It may not take private property without compensation even for a public purpose and to advance the general welfare. (*Matter of Eaton* v. *Sweeny*, 257 N. Y. 176.) "The protection of private property in the fifth amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. A similar assumption is made in the decisions upon the fourteenth amendment. *Hairston* v. *Danville & Western Ry. Co.*, 208 U. S. 598, 605. When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the constitution of the United States." (*Pennsylvania Coal Co.* v. *Mahon*, 260 U. S. 393, 415.)

In the prevailing opinion in that case, Mr. Justice HOLMES pointed out that "the general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking" (p. 415). Whether a regulation does go too far is "a question of degree — and therefore cannot be disposed of by general propositions," and here Mr. Justice HOLMES gave warning that "we are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change" (p. 416). The dissent of Mr. Justice BRANDEIS in that case is not based upon difference of opinion in regard to general principles, but upon different evaluation of the degree of the restrictions there challenged.

The warning of Mr. Justice Holmes should perhaps be directed rather to Legislatures than to courts; for the courts have not hesitated to declare statutes invalid wherever regulation has gone so far that it is clearly unreasonable and must be " recognized as taking;" and unless regulation does clearly go so far the courts may not deny force to the regulation. We have already pointed out that in the case which we are reviewing, the plaintiff's land cannot at present or in the immediate future be profitably or reasonably used without violation of the restriction. An ordinance which *permanently* so restricts the use of property that it cannot be used for any reasonable purpose goes, it is plain, beyond regulation, and must be recognized as a taking of the property. The only substantial difference, in such case, between restriction and actual taking, is that the restriction leaves the owner subject to the burden of payment of taxation, while outright confiscation would relieve him of that burden.

The situation, of course, might be quite different where it appears that within a reasonable time the property can be put to a profitable use. The temporary inconvenience or even hardship of holding unproductive property might then be compensated by ultimate benefit to the owner or, perhaps, even without such compensation, the individual owners might be compelled to bear a temporary burden in order to promote the public good. We do not pass upon such problems now, for here no inference is permissible that within a reasonable time the property can be put to a profitable use or that the present inconvenience or hardship imposed upon the plaintiff is temporary. True, there is evidence that the neighborhood is improving and that some or all of the conditions which now render the district entirely unsuitable for residence purposes will in time be removed. Even so, it is conceded that prognostication that the district will in time become suited for residences rests upon hope and not upon certainty and no estimate can be made of the time which m'' elapse before the hope becomes fact.

During the nine years from 1928 to 1936, when concededly the property was unsuitable for any conforming use, the property was assessed at $18,000, and taxes amounting to $4,566 were levied upon it, in addition to assessments of several thousand dollars; yet, so far as appears, the district was no better suited for residence purposes at the time of the trial in 1936 than it was when the zoning ordinance was amended in 1928. In such case the ordinance is clearly more than a temporary and reasonable restriction placed upon the land to promote the general welfare. It is in substance a taking of the land prohibited by the Constitution of the United States and by the Constitution of the State.

We repeat here what under similar circumstances the court said in *People ex rel. St. Albans-Springfield Corp.* v. *Connell* (*supra*, p. 83): " we are not required to say that a merely temporary restraint of beneficial enjoyment is unlawful where the interference is necessary to promote the ultimate good, either of the municipality as a whole or of the immediate neighborhood." There the court held that the " ultimate good " could be attained and a " productive use " allowed by a variation of the zoning ordinance that " will be temporary and provisional and readily terminable." Here the application of the plaintiff for any variation was properly refused, for the conditions which render the plaintiff's property unsuitable for residential use are general and not confined to plaintiff's property. In such case, we have held that the general hardship should be remedied by revision of the general regulation, not by granting the special privilege of a variation to single owners. (*Matter of Levy* v. *Board of Standards & Appeals*, 267 N. Y. 347.) Perhaps a new ordinance might be evolved by which the " ultimate good " may be attained without depriving owners of the productive use of their property. That is a problem for the legislative authority, not for the courts. Now we hold only that the present regulation *as applied to plaintiff's property* is not valid.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgment accordingly.