D. Ormonde Ritchie, J.
The petitioner, Temple Israel of Lawrence, brings this proceeding pursuant to article 78 of the Civil Practice Act, for an order reversing, annulling and setting aside a determination and order of the respondents, constituting the board of appeals of the incorporated Village of Lawrence, denying petitioner’s application for a variance of the provisions of the building zone ordinance of the village so as to permit the erection on property in a residence “ C ” zone of an extension of the present structure of petitioner, to be devoted to use as classrooms for religious training and instruction and to include a gymnasium and swimming pool for use by members of petitioner’s congregation.
The existing building zone ordinance of the Village of Lawrence prohibits the use of property in residence “ C ” zones for purposes other than the erection of one-family dwellings. The board of appeals in denying petitioner’s application stated the *1086 following grounds in support thereof: “ (1) The applicant has failed to show unnecessary hardship in complying with the existing zoning regulations. Applicant admitted that there was no impossibility of complying. The enlargement of the facilities by adding a second story was contemplated when the wing was built in 1951. No reason was advanced why this could not be built now. There was no showing that the wing could not be extended to the south or to the north or partly in either direction in a manner that would provide the desired additional facilities. A system of quadrangles might .also be worked out. If a variance should be needed in respect to parking, an application to that end might be made to this Board. Assuming that there might be an additional cost to the applicant of $50,000. or $100,000., and that the result might be less pleasing architecturally, it does not follow that the applicant would sustain unnecessary hardship in solving its problem in any one of those ways, or possibly in other ways that a resourceful architect might devise. The hardship on which the applicant relies to support its application flows from the particular method which it has adopted in carrying out this expansion, and is not caused by the provisions of the zoning ordinance. (2) The applicant has also failed to establish injustice in complying with the existing zoning regulations. Injustice is a relative term, in which must be considered the consequences to the neighbors and to the village at large as well as to the applicant. With the exception of the owner of the lot under option, who also resides on the northwesterly corner of Fulton Street and Central Avenue, all of the property owners on Fulton Street objected to granting the application. Many of these objectants were members of the applicant’s own congregation. Fulton Street is a quiet, dead-end, residential street. There are no traffic problems now and no traffic dangers to the seventeen children who live there. This proposed $500,000 building would be a large and massive one, completely out of keeping with the one-family dwellings on Fulton Street. It would destroy much of the charm and attractiveness of this street. Its presence would deprive residents of light and air. It would augment the congestion and dangers of traffic on streets where children might be. It would damage the character of the district as a residential one and impair the desirability and value of the property already devoted to private residences. In our opinion, justice inclines in favor of the Fulton Street residents and against the applicant. (3) The objectants urged that subsection (f) of Section 211.34 bars the Board of Appeals from permitting the extension of a non-con *1087 forming use beyond the lot or premises which were devoted to the non-conforming purpose at the time the prohibiting provisions of the ordinance were adopted, in other words that an extension of a non-conforming use must be confined to the non-conforming lot, and cannot be permitted beyond it. While we are not prepared to agree with this contention in all cases, particularly in view of the broad provisions of subsection (a), it at least shows a clear purpose of the ordinance to hold nonconforming uses within strict territorial limits, and to permit their extension to newly acquired property (if allowed at all), only in extraordinary cases. In our view, the facts presented in this case do not justify us in disregarding the spirit and purpose of that provision. We hold that the extension of this non-conforming use to the lot under option on Fulton Street would be contrary to the general purpose and intent of the ordinance and of the regulations established by the ordinance. (4) We think that the Sands Point case (Matter of Community Synagogue v. Bates, 1 N Y 2d 445) and the Rochester case (Matter of Diocese of Rochester v. Planning Board, 1 N Y 2d 508), referred to by the applicant, do not control our decision here, (a) A denial of the requested variance does not prevent or restrict the applicant’s use of its property for religious uses. It does not prevent the applicant from carrying out the purposes that it desires. Greater foresight on the applicant’s part when the wing was built in 1951, would have avoided the very difficulties upon which it now relies in support of its application. Although the applicant would prefer an expansion to Fulton Street, the difficulties in providing the desired facilities on its present property are not insuperable and the additional cost (10 per cent to 20 per cent) is not excessive. In our view it is not contrary to the principles of the cited cases to require the applicant to solve its own problems without intruding upon and damaging the property of its neighbors, (b) Undoubtedly religious activities and benevolent activities are closely associated. Almost any humanitarian effort may have its religious aspects. Yet on the evidence in this case we cannot hold that the use of the proposed Aving for activities such as a gymnasium or a swimming pool, available for all members of the congregation without regard to age, are essential to the use of the wing for its avowed purpose of religious instruction, or so important for the applicant’s general religious purposes as to be immune from zoning regulation, (c) The filing of this application for a variance presupposes that there is something for us to decide — in other words, that we have jurisdiction to grant the variance *1088 requested, or to deny it. We have considered the application in this light. We do not agree that the cases which we have cited, or the principles that they state, have made this application an idle gesture, and compel us to grant the application automatically without conditions, or prohibit us from rendering the decision that we think should be rendered under the ordinance, (d) Indeed, a denial of the application, as it seems to us, falls squarely within the scope of the qualifying language of the Court of Appeals in the Rochester case where it was said: ‘ That is not to say that appropriate restrictions may never be imposed with respect to a church and school and accessory uses, nor is it to say that under no circumstances may they ever be excluded from designated areas. In this case, however, and in reference to this property, the decisions of the town bodies are arbitrary and unreasonable.’ In reference to this application and this property, we believe our decision is appropriate and based on sound and reasonable grounds, (e) In any event, we have no power to hold the Village Building Zone Ordinance, or any part of it, to be unconstitutional, invalid or unenforceable on any ground. We must take the ordinance as it stands, and it is our duty to apply it as it reads. If it is invalid in any respects, some other court or body must make the ruling. The application is denied. ’ ’
It is the petitioner’s contention that the principle now clearly enunciated as the law of this State, is that a church or temple may not be excluded from any residence district by any zoning regulation unless there is a clear showing that such use would impair the health, safety, morals or general welfare of the community (Matter of Community Synogague v. Bates, 1 N Y 2d 445; Matter of Diocese of Rochester v. Planning Bd., 1 N Y 2d 508). The petitioner further urges that in the absence of such affirmative showing, it has a vested right to use the property for the extension. In opposing the relief sought in this proceeding, the respondents defend the validity of the ordinance and contend that the use sought by petitioners exceeds those contemplated as religious in that the recreational facilities of the extension are open to use by all members of the congregation.
Additional opposition is interposed by intervening owners of residences in the immediate neighborhood tending to establish that the proposed extension will increase traffic hazards and congestion on Fulton Avenue; that there will be an interference with access to light and air by adjoining residences and that values in the neighborhood will be substantially depreciated; that the proposed extension will be unsightly and inharmonious *1089 with existing structures in the neighborhood and that petitioner presently owns sufficient property to accommodate erection of the proposed structure.
In addition to the opposition on the merits, the intervening adjacent property owners challenge the validity of the service of the petition and order and raise the defense of the Statute of Limitations, pointing out that the decision of the board of appeals of the Village of Lawrence denying petitioner’s application was filed in the office of the village clerk on May 19, 1957, and that service of the petition and order commencing this proceeding was not validly effected nor was the proceeding commenced within the 30-day limit prescribed therefor. The respondent board of appeals does not raise such objections nor are they urged by them in opposition to the proceeding. All of the respondents herein contest petitioner’s application on the merits and accordingly the objections to the proceeding challenging the validity of the service and raising the defense of the Statute of Limitations are found to have been waived.
The issues to be determined herein are whether the proposed use and the uses accessory thereto are within those uses declared by the law of this State to be exempt from zoning ordinances excluding churches and synagogues from residential districts.
The language of Matter of Diocese of Rochester v. Planning Bd. (supra) on this point is as follows: “ It is well established in this country that a zoning ordinance may not wholly exclude a church or synagogue from any residential district. Such a provision is stricken on the ground that it bears no substantial relation to the public health, safety, morals, peace or general welfare of the community”. (P. 522.)
In attempting to distinguish the applicability of that case to the application herein made, the respondents point to additional language therein stating ‘ ‘ That is not to say that appropriate restrictions may never be imposed with respect to a church and school and accessory uses, nor is it to say that under no circumstances may they ever be excluded from designated areas. ” (Matter of Diocese of Rochester v. Planning Bd., supra, p. 526.)
This court does not construe that language to nullify the statement of law that a zoning ordinance may not exclude a church or synagogue from any residential district. Certainly, appropriate restrictions may be imposed providing for the furnishing of adequate parking facilities and for the control of traffic problems and the elimination of hazards resulting therefrom or, in general, in furtherance of safety and welfare of the community as well as the safety and welfare of those in attend *1090 ance at the church and school. Exclusion of churches and schools from designated areas may well be justified where such situs might endanger those in attendance thereat.
The record is wholly insufficient of proof justifying a conclusion that the health, welfare or safety of the community or of the congregation will be impaired by the proposed extension and accordingly the denial of the permit for which application was made is contrary to law.
Next to be considered are respondents’ contentions that the proposed extension is not intended to be devoted solely to religious purposes. The record reveals that the primary purpose of the extension is to provide 20 classrooms for religious instruction. This is unquestionably an approved adjunct to houses of worship. As to the recreational facilities, our courts have held that playgrounds, gymnasiums and consonant facilities, may be permitted as accessory uses thereto (Matter of Community Synagogue v. Bates, supra; Shaffer v. Temple Beth Emeth, 198 App. Div., 607). The contention is untenable.
On January 7, 1957, the petitioner filed an application for the erection of a building or alterations in the office of the department of buildings of the Village of Lawrence. In a letter dated January 3, 1957, over the signature of petitioner’s president and addressed to the building inspector of the Village of Lawrence, the following statement was made: “We understand that it will be necessary to make an application to the Board of Appeals for a variance.”
A notice was published by the respondent board of appeals that a public hearing would be held in relation to the application of petitioner for a variance of the provisions of the building zone ordinance of the Village of Lawrence to permit the erection of the proposed extension. Pointing out that an application for a variance of the restrictions of an ordinance necessarily assumes that validity of the ordinance (Arverne Bay Const. Co. v. Thatcher, 278 N. Y. 222), it is the respondents’ position that petitioner cannot succeed in a proceeding brought pursuant to article 78 of the Civil Practice Act in which the validity of the ordinance is challenged. The doctrine in Arverne Bay Const. Co. v. Thatcher (supra) would seem to be relaxed by the holding in Matter of Diocese of Rochester v. Planning Bd. (supra) in the statement therein that “ It is a general rule that a party cannot, in the same proceeding, rely upon a statute or retain benefits thereunder and attack its constitutionality” (p. 519). (Emphasis added.) The court holding further, “ An ordinance, constitutional on its face (or deemed so) may be construed and applied in an unconstitutional manner [citing cases]. If the *1091 construction of an ordinance as applied to a particular piece of property and a particular set of facts is so arbitrary and unreasonable as to result in an invasion of property rights, the action of the zoning board thereunder will be invalidated [citing cases].” (P. 521.)
In Arverne Bay Const. Co. v. Thatcher (supra), it was stated ‘' the denial of the application for a variance would not be a conclusive adjudication of the validity of the statute ” (p. 227); applying this reasoning, this court is led to the conclusion that the making of an application for a variance is no more conclusive of the validity of the ordinance. The validity of the ordinance is to be determined as a matter of law and since Matter of Diocese of Rochester v. Planning Bd. (supra) and Matter of Community Synagogue v. Bates (supra) have determined that excepting where it has been established that the erection of a church or synagogue result in impairment of public health, welfare or safety, they are not subject to exclusion under zoning ordinances. Petitioner having been under no legal compulsion to seek a variance to erect the extension, it cannot be held that petitioner’s participation in a proceeding to obtain relief that was not required deprives petitioner from its right to the issuance of the permit. Diminution of the esthetic, inconvenience to neighboring property owners or traffic problems, where such factors do not impair the welfare or safety of the community, are not to be considered in determining an application for a permit to erect a church, synagogue or its accessory uses of schools for religious training and incidental recreational facilities. Denials of such applications based upon reasons other than those involving impairment of public health, welfare or safety must fall.
The petition is granted and the determination of the respondent board is reversed and annulled. A permit for the erection of the proposed structure is directed to be issued upon presentment of a proper application therefor.