Charles Lambíase, J.
This is an action brought by the plaintiffs for a declaratory judgment declaring the Zoning Ordinance of the City of Rochester hereinafter referred to ‘ ‘ unconstitutional and void, in that it precludes the use of the property herein described for any purpose for which it is reasonably adapted and is confiscatory and is not binding upon the plaintiffs”. (Complaint.)
The City of Rochester contends that it is incumbent upon plaintiffs to show, as a condition precedent to the instituting of this action, that the ordinance does not authorize a variance of the general restrictions which would permit the use of their property for a purpose to which it is reasonably adapted, or *114 that such application having been made had been refused; and further thait plaintiffs must demonstrate unconstitutionality of the zoning ordinance in question beyond a reasonable doubt. It urges that the complaint be dismissed.
Concededly,. plaintiffs did not apply for a variance under the zoning ordinance involved although provision for such variance application is made in said ordinance. They contend that under the circumstances it is not a condition precedent to the instituting of their action.
At the time of the trial plaintiffs were and since the 14th day of April, 1954 had been the owners, as tenants by the entirety, of certain premises in the City of Rochester, County of Monroe, New York, described as follows: “ all that tract or parcel op laud, situate partly in the City of Rochester and partly in the Town of Irondequoit, County of Monroe and State of New York and being a part of Lot No. 7, TWP 14, R 7, bounded as follows: Commencing at a point in the north line of said Lot No. 7, 3 chains west from the center line of a continuation of St. Joseph Street; thence south 4° 30' west parallel with St. Joseph Street 7.41 chains; thence south 89° 15' west 1.46 chains; thence south 57° 15' west 1.78 chains; thence south 66° 30' west 1.22 chains; thence south 79° west 1.7 chains; thence south 78° 30' west 80 links; thence south 30' west 6.20 chains; thence south 89° east 66 links; thence south 4° west 5.31 chains; thence north 85° 45' west 9.10 chains; thence south 4° 30' west 5.20 chains; thence south 84° 45' east 1.25 chains; thence south 11° west 5.26 chains; thence north 85° 45' west 3.50 chains to the Genesee River; thence along the river north 6° 30' east 18.80 chains; thence north 6° 30' west 9 chains; thence north 44° west 2.97 chains; thence north 22° 45' west 66 links; thence north 25° east along the river 1.44 chains to the northwest corner of said Lot No. 7; thence south 85° 15' east 19.73 chains to the place of beginning. Together with all the right title and interest of the party of the first part in and to the lands extending from the westerly boundary line of the premises above described to the center of said Genesee River.” (Plaintiffs’ Exhibit 1, Deed.)
The foregoing premises lie to the west of the west line of the New York Central Railroad Company, to the east of the Genesee River bed, are south of the Stubs on Street Bridge and, generally, are known as 11 Rattlesnake Point”. They constitute about 6 acres of land and about 12 acres of swamp varying in width situate between the winding courses of both the river and of the railroad. The land is about 50 to 75 feet above the water. The premises are substantially unimproved, and were in their original state until on or about the 17th day of March, *115 1955 when plaintiffs filled in the swampland, graded the premises, built a road thereon, and did some preliminary work to its development as a marine base in connection with which they proposed to construct and to erect a number of boat slips along the east bank of the Genesee River upon which they front. Although certain preliminary applications relative to the use and occupation of said premises were made to the City of Rochester by plaintiffs, no permit was ever issued to them for the erection of any structures in connection with their proposed use.
The first zoning of the premises was in 1919 when they were zoned B, heavy industrial. The Zoning Ordinances of the City of Rochester of 1930 and of 1941 similarly zoned the premises. They remained thus zoned until about September, 1957 when the change in zoning to R-2 was made. Briefly, B, heavy industrial permitted the property to be used for the projected use thereof to be made by the plaintiffs; R-2 zoning restricts it to residential purposes (one- and two-family dwellings) and does not provide for the use contemplated by plaintiffs.
While plaintiffs did not ask for a variance, through their efforts there was introduced in the City Council of the City of Rochester on June 8, 1958 an ordinance which purported to amend “ Chapter 91 of Volume II of the Municipal Code, zoning ordinance, by changing property between the center of the Genesee River and the westerly line of the New York Central Railroad from R-2 to M-l District. — Vicinity of Rattlesnake Point.” (Plaintiffs’ Complaint, p. 3; Exhibit 14.) This amendment was to effect the change of zoning requested by plaintiffs. After a public hearing, the amendment was defeated.
There was evidence adduced upon the trial on behalf of the plaintiffs that in the vicinity of their property there are an operating railroad, active industrial plants, and the site of a former foundry; that opposite the lands of the plaintiffs and on the other bank of the river, there is marshland; and that their property is not adapted to residential use, the only use which can be made of the property under the restrictions of the zoning ordinance.
The defendant rested on plaintiffs’ proof and adduced no evidence of its own, resting its case on its position taken with reference to the plaintiffs’ burden and maintaining that said burden has not been sustained.
On this record we have concluded that plaintiffs, having asserted an invasion of their property rights, have met the burden of proof by establishing that their property is so situated that it has no possibilities for residential use, and that the *116 zoning necessarily permanently precludes the use for which it is most readily adapted, i.e., heavy industrial use, a use such as is permitted and actually made of other property fronting the river in its general vicinity.
The conditions which render plaintiffs’ property unsuitable for residential. use are general and are not confined to their property. No inference is permissible that within a reasonable time 'the property as now zoned can be put to a profitable use or that the present inconvenience or hardship imposed upon the plaintiffs is temporary. There is no evidence that the neighborhood is improving and that some or all of the conditions which now render the district unsuitable for residential purposes will in time be removed. The plaintiffs’ land cannot at present or in the immediate future be profitably or reasonably used without violation of the restriction.
Under such circumstances, the ordinance as it pertains to the plaintiffs ’ property is so unreasonable and arbitrary as to constitute an invasion of property rights, contrary to constitutional due process and, as such, is invalid, illegal and a void enactment.
‘ ‘ While the common council has the unquestioned right to enact zoning laws respecting the use of property in accordance with a well-considered and comprehensive plan designed to promote public health, safety and general welfare (General Oity Law, § 83), such power is subject to the constitutional limitation that it may not be exerted arbitrarily or unreasonably (Nashville, C. & St. L. Ry. v. Walters, 294 U. S. 405; Matter of Brous v. Smith, 304 N. Y. 164) and this is so whenever the zoning ordinance precludes the use of the property for any purpose for which it is reasonably adapted (Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222).” (Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493, 498-499.)
“An ordinance which permanently so restricts the use of property that it cannot be used for any reasonable purpose goes, it is plain, beyond regulation, and must be recognized as a taking of the property. The only substantial difference, in such case, between restriction and actual taking, is that the restriction leaves the owner subject to the burden of payment of taxation, while outright confiscation would relieve him of that burden.” (Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222, 232.)
Was it necessary under the circumstances herein, as a condition precedent to the instituting of this action, for plaintiffs to have made an application for a variance and to have been refused the relief requested? We think not.
‘ ‘ Where a restriction imposed by a general rule upon the use of property tends to promote the general welfare, the gen *117 eral rule may be reasonable even though its strict enforcement might cause unnecessary hardship or damage to the owner of particular property, provided the rule is made subject to variation in its application in case of such hardship. Then the courts will not refuse enforcement of the general rule, at least until the variation has been refused. In the first instance, the official body intrusted with that function must determine in such case the propriety and the extent of the variation.” (Dowsey v. Village of Kensington, 257 N. Y. 221, 229.)
Such an application is primarily an appeal to the discretion of the board and, for that purpose, the validity of the ordinance is assumed, but that does not operate to confer validity if, in fact, as here, the zoning ordinance is clearly confiscatory. (Cf. Arverne Bay Constr. Co. v. Thatcher, supra.) Here the restriction in itself constitutes an invasion of plaintiffs’ property rights. Plaintiffs cannot be required to ask as a special privilege for a variation of the restriction. Under the circumstances herein, however, the general hardship should be remedied by the revision of the general regulation and not by granting a special privilege by a variation to single owners. (Arverne Bay Constr. Co. v. Thatcher, supra, p. 233, citing Matter of Levy v. Board of Stds. & Appeals, 267 N. Y. 347.) Upon the record an attack on the legality of the zoning ordinance prior to any request for a variance is accepted as proper procedure. (Dowsey v. Village of Kensington, supra.)
Implicit in the foregoing is the conclusion that plaintiffs have no adequate remedy at law.
The foregoing constitutes our decision made pursuant to section 440 of the Civil Practice Act.
Let declaratory judgment be entered accordingly.