JERSEY CENTRAL POWER & LIGHT COMPANY, A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT, v. MORRIS COUNTY LAND IMPROVEMENT COMPANY, A NEW JERSEY CORPORATION, *ET AL.*, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued November 15, 1965—Decided April 20, 1966.

42

Before Judges GOLDMANN, FOLEY and COLLESTER.

*Mr. John T. Dolan* argued the cause for appellants (*Messrs. Crummy, Gibbons & O'Neill,* attorneys; *Mr. Paul T. Murphy,* on the brief).

*Mr. Robert O. Brokaw* argued the cause for respondent.

The opinion of the court was delivered by

GOLDMANN, S. J. A. D. Defendant property owner appeals a jury award in a condemnation proceeding brought by plaintiff public utility.

The lands in question are located in the "Meadows Development Zone" of Parsippany-Troy Hills Township, N. J. Plaintiff sought an easement in and across defendant's lands for its electric power lines and a 20-foot-wide access roadway. The former would require 8.60 acres, the latter .232.

Plaintiff applied to the Board of Public Utility Commissioners pursuant to *R. S.* 48:7–3 (now repealed) for the right to acquire the necessary easement and right-of-way by condemnation. Authority to condemn was granted November 29, 1962, and on December 17 plaintiff filed its complaint seeking the appointment of condemnation commissioners to fix the compensation to be paid for the taking, *N. J. S. A.* 20:1–2. The actual taking had occurred three days earlier, on December 14.

The zoning of defendant's property (129 acres in all) was considered in *Morris County Land Improvement Co. v. Parsippany-Troy Hills Tp.,* 40 *N. J.* 539 (1963), where the court held that the zoning in effect at the time of plaintiff's taking was unconstitutional. From that case (at *pp.* 543–545) and the present record we learn that in 1954 defendant's lands were placed in a zone designated as "Indeterminate." In 1959 defendant unsuccessfuly applied to the governing body

to rezone its property for industrial use. Thereafter, in January 1960 it obtained limited permission from the township committee to place fill along Perrine Road at its own risk, since a revision of land uses in the area was then under consideration.

In March 1960 the township committee repealed the "Indeterminate Zone" provisions and created a new zoning classification for the area, known as the "Meadows Development Zone." The following uses, summarized in the *Morris County Land* opinion, were permitted in that zone: agricultural uses, raising of woody or herbaceous plants, commercial greenhouses, and raising of aquatic plants, fish and fish food—with a one-family dwelling as an adjunct to any of these uses, provided its lowest floor was a specified distance above flood level; outdoor recreational uses operated by a governmental division or agency; conservation uses, including drainage control, forestry, wildlife sanctuaries and facilities for making them available and useful to the public; hunting and fishing preserves; public utility transmission lines and substations; radio or television transmitting stations and antenna towers, and township sewage treatment plants and water supply facilities.

After exhausting its administrative remedies, Morris County Land Improvement Company challenged the constitutional validity of the 1960 ordinance by a prerogative writ action brought in the Law Division. The Law Division sustained the ordinance on May 7, 1962. Defendant thereupon appealed the judgment, and the appeal was certified to the Supreme Court on its own motion before being heard in this court. The appeal was pending when plaintiff filed its complaint in condemnation on December 17, 1962. Commissioners were duly appointed. On May 3, 1963 defendant filed a notice of motion for an order staying the condemnation proceedings pending determination of the appeal from the Law Division judgment so that the commissioners might have the advantage of such decision as the Supreme Court might hand down, appellate argument having been heard a few months

before. The motion for stay was denied on May 20, 1963, and on May 24 the commissioners filed their report and fixed damages at $9,150.

Defendant appealed that award on May 31. Thereafter, on July 23 the Supreme Court determined that the "Meadows Development Zone" provisions of the 1960 ordinance, as amended, were invalid in their entirety; the prior zoning could not withstand a challenge and, therefore, the area was to all intents and purposes unzoned. Since the absence of all regulation would permit the establishment of any use by any means—a result which might be damaging to the local public interest—the court deemed it proper for judgment to be entered by the Law Division, that judgment not to become effective for such a period as the trial court deemed reasonably necessary for the enactment of new and proper zoning regulations. *Morris County Land Improvement Company v. Parsippany-Troy Hills Tp.*, above, 40 *N. J.*, at *page* 559.

At the time a jury was impaneled on April 7, 1964 on appeal from the award of the condemnation commissioners, the township had not as yet enacted zoning regulations for the area in question. (The extension of time granted by the Law Division judge for such zoning had expired on February 15, 1964.) After viewing the premises and hearing the extended testimony of the respective experts produced by the parties, the jury returned a verdict of $5,500. This appeal followed.

At the trial defendant owner's expert was of the opinion that "not only the probable use but the highest and best use of this land is industrial," and on this premise estimated damages on a before-and-after valuation at $33,160. He testified he knew of the appeal that had been in the Supreme Court, and on the assumption that the property was not zoned as of the time of plaintiff's taking and therefore could be used for any lawful purpose, appraised the damages at $41,000.

By contrast, plaintiff's expert based his appraisal on the zoning in effect at the time of the taking and fixed $3,850 as the total damages. He stated: "The highest and best use was in accordance with the zoning, as a bird sanctuary, as a place

where you could grow herbaceous plants." In his opinion a potential buyer would not, as of the time of the taking, consider that there was a probability of a zoning change, nor pay a premium for the land based on speculation as to the outcome of the zoning appeal pending in the Supreme Court. He gave as his reason that the whole meadow was property that "the community [sic] had assured me * * * that the community did not want building because of the lack of percolation, the possibility of floods."

On cross-examination plaintiff's expert stated he had made his appraisal on July 19, 1962, some five months before the taking, and knew then that there was an appeal pending from the Law Division zoning decision. However, he said that his knowledge of the appeal had no bearing on his appraisal; there was very little possibility of a change in zoning, and if the Law Division judgment were reversed, it would have little, if any, effect. The actual use of the land for wildlife preserves would probably not change; a buyer would not be likely to use the land for purposes other than those permitted in the "Meadows Development Zone" because of the wet condition of the terrain and the expense and difficulty of reclamation.

The trial judge charged the jury that defendant was entitled to the value of the easement as well as the damage to its remaining lands as of December 14, 1962, to be measured by the difference in market value of the land before and immediately after the taking. The jury was to consider the highest and best use to which the land in question might have been put at the time of the taking or, in reasonable anticipation, in the near future following that date. He then mentioned the 1960 ordinance setting up the "Meadows Development Zone"; defendant's action challenging its validity insofar as its property rights were concerned; the Law Division judgment sustaining the ordinance and defendant's appeal therefrom; the institution of the condemnation action while that appeal was pending, and the Supreme Court's determination on July 23, 1963 that the "Meadows Development Zone" provisions were

invalid, thus, in effect, leaving the area unzoned. The trial judge then again reminded the jury that basically it was concerned with a value of defendant's land immediately before and after the taking in December 1962. After referring to the conflicting testimony of the experts and the jury's function in evaluating that testimony, he read two of the requests to charge presented by plaintiff. We are concerned here with the second:

"The ultimate issue here is the fair market value as of the date of taking determined by what would be agreeable to a buyer and seller acting without compulsion. Manifestly the permissible uses under a zoning ordinance bear crucially upon that value.

It is generally agreed that if as of the date of taking there is a reasonable probability of a change in the zoning ordinance in the near future, the influence of that circumstance upon the market value as of that date may be considered.

The important caveat—or warning—is that the property is not to be valued for a use which would be permitted if the zoning were changed. Zoning changes are not routinely made or granted. A purchaser in a voluntary transaction would rarely pay the price the property would be worth if the zoning change were an accomplished fact. No matter how probable a zoning change may seem, an element of uncertainty remains and has its impact upon the selling price. At most a buyer would pay a premium for that probability in addition to what the property is worth under the restrictions of the existing ordinance. In permitting proof of a probable zoning change, the law merely seeks to recognize a fact, if it does exist. In short if the parties to a voluntary transaction would as of the date of taking give recognition to the probability of a zoning amendment in agreeing upon the value, the law will recognize the truth.

But such evidence should be carefully confined to its proper role. It may serve only to support the reasonableness of the factual claim that on the date of taking the parties to a voluntary sale would have recognized and been influenced by the probability of a zoning change in the near future in fixing the selling price. The fact would still remain that on the date of taking the property was otherwise zoned, and the value as of that date must still be reached on the basis of the facts as they then would have appeared to and been evaluated by the mythical buyer and seller."

Defendant made immediate objection to this charge. For its own part it had requested the court to charge, among other things, that in light of the Supreme Court's decision declaring the ordinance void *ab initio,* the lands were, as a matter

of law, unzoned at the time of the taking, and therefore the owner was entitled to put the land to its highest and best use, namely, industrial purposes. The court denied the request.

The quoted instruction was inspired by, and in fact largely taken from, what was said in *State by State Highway Commissioner v. Gorga,* 26 *N. J.* 113, 116 *et seq.* (1958). However, we do not deal here with a situation involving a probable amendment to a zoning ordinance, but with the prospect of a judicial ruling that the zoning ordinance under attack was unconstitutional. It is only in the former situation that the charge would have real pertinence and give correct guidance to the jury.

The court in the *Morris County Land* case held that the provisions of the "Meadows Development Zone" regulations were clearly far too restrictive, and as such were constitutionally unreasonable and confiscatory. It ruled that the restraints against use contained in the ordinance were tantamount to a taking, the situation being epitomized by what Judge Lehman, speaking for the New York Court of Appeals, said in *Arverne Bay Construction Co. v. Thatcher,* 278 *N. Y.* 222, 15 *N. E. 2d* 587, 117 *A. L. R.* 1110 (1938):

"The only substantial difference, in such case, between restriction and actual taking, is that the restriction leaves the owner subject to the burden of payment of taxation, while outright confiscation would relieve him of that burden."

The court spoke of the "nullifying effect of the use and soil reclamation restrictions on any productive use of property in the zone"—without reclamation nothing but a passive use was possible (at *page* 557). The court further observed that there was no refutation of the owner's contention that industrial use was feasible after filling, in view of similar zoning across the municipal boundary in Hanover and the access roads from both Hanover and East Hanover Townships (at *page* 558).

In short, defendant owner had been deprived of the use of its lands by an act of the municipality prohibiting any use other than those permitted in the "Meadows Development

Zone," such as a wildlife preserve, conservation measures, hunting and fishing, and public utility lines and substations. Thereafter, between the enactment of the invalid ordinance and the formal declaration of its invalidity by the Supreme Court, plaintiff utility took the premises by eminent domain. It successfully opposed any stay of the filing of the condemnation commissioners' report when a decision by our highest court was imminent. It was equally successful at the trial *de novo* in the Law Division in not having the jury determine the value of the lands in an unzoned state at the time of the taking, with the owner entitled to put them to their highest and best use, *i. e.,* for industrial purposes.

The situation, then, is that although plaintiff does not question the correctness of the Supreme Court decision, it would reap the same benefit as if that decision had never been rendered. It would value the property as if the zoning in effect at the time of the taking, December 14, 1962, was valid.

It is important to keep in mind what has already been said: the situation at the time of taking was not one where the market value could be determined by what would be agreeable to a willing buyer and a willing seller who might have had reason to believe that a zoning change was in probable prospect. Both the public utility and the owner were fully aware that the zoning ordinance was under attack. They were also aware of the fact that the municipality had previously resisted any change to an industrial use, and therefore could fairly have concluded that even were the Law Division judgment upholding the validity of the existing ordinance affirmed on appeal, the prospects of any change to a higher and better use were dim indeed, if not nonexistent.

Although *State by State Highway Commissioner v. Gorga,* above, considered the possible impact of the probability of a zoning change in valuing lands taken in condemnation, counsel have found no New Jersey case (nor have we) dealing with the question of the valuation of condemned lands which were subject to unconstitutional zoning.

██ The *Morris County Land* case must be held as having declared the "Meadows Development Zone" regulations void in their very inception. Accordingly, there was no valid zoning regulation with regard to the property in question at the time of the taking, and defendant was entitled to an instruction to that effect. This view is supported by *Fox v. Snow,* 6 *N. J.* 12 (1950), which drew a clear distinction between a legislative amendment and a judicial decision. The court there said:

"* * * [A] change of the established law by judicial decision is retrospective. It makes the law at the time of prior decisions as it is declared in the last decision, as to all transactions that can be reached by it. On the other hand a change in the settled law by statute is prospective only. * * *" (at *page* 14)

See also *State v. Murphy,* 85 *N. J. Super.* 391, 402 (*App. Div.* 1964), affirmed o. b. 45 *N. J.* 36 (1965) ; *Dalton v. St. Luke's Catholic Church,* 27 *N. J.* 22, 25–26 (1958).

██ Plaintiff exercises the power of eminent domain by grace of the State. Under our 1947 *State Constitution, Art.* I, *par.* 20, the landowner must receive "just compensation." In our view, defendant has not received just compensation in the circumstances of this case. It was denied its constitutional rights when the zoning ordinance was enacted and while it was in effect. We should not freeze this injustice. *Cf. Board of Comm'rs of State Institutions v. Tallahassee Bank and Trust Co.,* 108 *So.* 2d 74 (*Fla. D. Ct. App.* 1959), writ quashed 116 *So.* 2d 762 (*Fla. Sup. Ct.* 1959).

Reversed and remanded for a new trial.