Gabrielli, J.
On this appeal, petitioner challenges respondent’s denial of its request for an area variance with respect to approximately 19% acres of land in the Village of Briarcliif *440 Manor which petitioner desires to develop as a large shopping center. In the alternative, petitioner argues that the floor area and building length restrictions of the zoning ordinance are unconstitutional as applied to the property in question.
The subject property is located on the easterly side of South Highland Avenue (State Route 9) in the Village of Briarcliff Manor; and is a portion of an original larger parcel of 34 acres, 2 Vi acres of which have been sold by petitioner and are now the site of a building occupied by the New York Telephone Company and the Brooklyn Savings Bank. Twelve of the original 34 acres are still owned by petitioner and are residentially zoned, while the subject 19% acre parcel is zoned "General Business B-2”. Under this zoning category, the most liberal in the village ordinance, residential commercial and light industrial uses are permitted. The variety of permissible commercial uses includes, inter alia, professional or business office, bank, restaurant, motion picture theatre, gasoline station, motor vehicle salesroom, laundry and retail establishment. However, in accordance with the village’s policy that retailing services be limited "primarily for the convenience of the inhabitants of the Village and the immediate locality”, restrictions are placed upon the magnitude of the retail development of the property. Under these restrictions, the floor area of an individual retail establishment used for merchandising or personal services is limited to 15,000 square feet[1] and the length of an individual structure may not exceed 180 feet. Petitioner sought a variance permitting it to erect a one-story commercial structure containing a floor area of 180,500 square feet, the major portion of which would be divided into three large retail stores with floor areas of 30,000, 38,900 and 70,000 square feet respectively. The over-all length of the proposed structure would be 965 feet. As is evident, the dimensions of the proposed structure greatly exceed those fixed by the ordinance.
Petitioner urges, and it is not disputed, that the topography of the land creates a severe hardship in the development of the subject property for shopping center purposes. The parcel contains numerous rock outcroppings and sharp inclines up to 70 feet above the grade of Route 9 and the course of Sparta Brook, a natural stream intersecting the property. Petitioner thus maintains that a small scale "neighborhood” shopping *441 center constructed in conformity with the zoning restrictions would not yield a reasonable return on the owner’s investment due to the exorbitant cost of site development, requiring a vast leveling operation at a projected cost of nearly three million dollars. The zoning board denied the variance on the grounds that the establishment of a large scale regional shopping center would (1) be harmful to the character of the surrounding area which consisted of residential and residentially zoned properties, (2) result in a hazardous traffic condition on Route 9, (3) create flooding and drainage problems for the village and the surrounding area and (4) violate the village wetlands ordinance which prohibits the alteration of natural watercourses such as Sparta Brook. Additionally, respondents also reason that the neighboring, more commercially developed Villages of Tarrytown and Ossining both possess regional shopping centers and thus both Briarcliff Manor and the surrounding environs have no need for the development proposed by petitioner. Special Term overturned the board’s decision but the Appellate Division reversed and reinstated the denial of the variance.
Prefatorily, we point out that since the variance sought in this case does not involve a use prohibited by the village zoning ordinance and does not seek a change in the "essential use of the land”, it should be characterized as an area variance (see Matter of Overhill Bldg. Co. v Delany, 28 NY2d 449, 453; Matter of Wilcox v Zoning Bd. of Appeals of City of Yonkers, 17 NY2d 249, 254; Matter of Village of Bronxville v Francis, 1 AD2d 236, affd 1 NY2d 839). As we have previously noted, the distinction is an important one since, in the usual case, a use variance will have a greater impact on the community than an area variance which does not involve a use prohibited by the ordinance (see Matter of Wilcox v Zoning Bd. of Appeals of City of Yonkers, supra, p 254; Matter of Hoffman v Harris, 17 NY2d 138, 144). However, the magnitude of the desired area variance, while within the confines of a permitted use, is significant since the greater the variance in area restrictions the more severe the likely impact upon the community. In the instant case, for example, petitioner seeks to utilize the property for a regional shopping center on a far larger scale than that permitted by the ordinance which envisions the use of the property for neighborhood retail stores serving only the immediate locality.
Having concluded that this case concerns an application for *442 an area variance, we look to the standards articulated in Matter of Fulling v Palumbo (21 NY2d 30) and cases decided after Fulling to determine whether the variance was properly denied by the zoning board of appeals. In Matter of Fulling v Palumbo (supra, p 33) this court formulated the rule that "where the property owner will suffer significant economic injury by the application of an area standard ordinance, that standard can be justified only by a showing that the public health, safety and welfare will be served by upholding the application of the standard and denying the variance.” The owner must, therefore, demonstrate that the specific use permitted by the ordinance, for which he desires to utilize the property, will not yield a reasonable return if the area standard restrictions are imposed. However, if there is a legitimate purpose for the ordinance and it is reasonably related to the public health, safety and welfare of the community, financial loss is insufficient to compel the granting of the variance (see Matter of Overhill Bldg. Co. v Delany, 28 NY2d 449, 454, supra).
Cases following Fulling have modified its broad holding and have held that the manner in which the financial hardship arises is a relevant factor which may be considered by the board. If the hardship may be deemed to be a self-created or self-imposed one then a showing of financial hardship itself does not entitle the owner to a variance. On the other hand, the fact that the hardship is self-created does not foreclose board approval of an area variance (see Conley v Town of Brookhaven Zoning Bd. of Appeals, 40 NY2d 309, 315; see, also, Matter of Overhill Bldg. Co. v Delany, supra, pp 454-457; Matter of 113 Hillside Ave. Corp. v Zaino, 27 NY2d 258, 261-263; Contino v Incorporated Vil. of Hempstead, 27 NY2d 701, revg on dissenting opn at App Div 33 AD2d 1043; Comment, Impact of Fulling on NY Zoning Law, 29 Rutgers L Rev 172, 182-184; 2 Anderson, NY Zoning Law and Practice [2d ed], § 18.43, pp 62-63; 2 Rathkopf, Law of Zoning and Planning [3d ed], pp 48-17-48-20). Thus, we have recently stated that "[financial hardship then is one factor that may be considered, but, by itself, is not determinative” (Conley v Town of Brook-haven Zoning Bd. of Appeals, supra, p 315). To this extent then, Fulling is distinguishable from the aforecited cases and the instant case since the petitioner in Fulling purchased the property before the zoning change rendered his parcel nonconforming and many of the surrounding lots were already *443 substandard (Matter of Fulling v Palumbo, supra, pp 34, 35-36; see, also, Rowe St. Assoc. v Town of Oyster Bay, 34 AD2d 987, 988, affd 27 NY2d 973).
Once proof of significant economic injury is adduced the burden of going forward with proof that the restriction is reasonably related to a legitimate exercise of the zoning power is upon the municipality (Matter of Fulling v Palumbo, supra, pp 33-35; 2 Anderson, op. cit., § 18.40, p 55). If, however, the legitimate purpose of the restrictions is established, the burden of demonstrating that the area standard restrictions are unrelated to the public health, safety and welfare and will not adversely affect the surrounding community remains upon the applicant (2 Anderson, op. cit., § 18.43, p 59). Obviously, the quantum of proof necessary to satisfy the above burdens varies with the magnitude of the variance sought. Where the change is slight, the more difficult it may be for the municipality to sustain its initial burden of establishing that the restriction is reasonably related to valid governmental interests. Conversely, where the change sought is great, the more difficult it will be for the applicant to demonstrate that the variance will not have a detrimental impact upon the community. Through this approach, the competing interests of the municipality and the property owner may be resolved. On judicial review, following an adversary hearing, at which both sides present evidence, the issue before the court is whether the action of the zoning board is founded upon substantial evidence (see Conley v Town of Brookhaven Zoning Bd. of Appeals, 40 NY2d 309, 314, supra; 2 Rathkopf, op. cit, pp 43-6-43-9; cf. Matter of Colton v Berman, 21 NY2d 322, 329; CPLR 7803, subd 4).
Turning to the facts of the instant case, we conclude that petitioner’s request for a variance was properly denied. Petitioner, it is true, adduced proof that the development of the property as a shopping center would entail enormous financial expenditure which, if the resulting development were to yield a reasonable return, could only be justified if it were relieved of the zoning restrictions. This would enable the shopping center to contain several large retail stores leased to so-called "anchor tenants” which would attract both a large volume of business and also smaller commercial tenants. However, when petitioner, a sophisticated developer of commercial properties, purchased the entire 34 acre parcel, it was aware of the difficulties attendant upon development of the subject 19% *444 acre parcel as a shopping center, and is certainly chargeable with knowledge of the interdictions of the zoning ordinance which limited such development. Thus, the financial injury incurred in developing the property as a shopping center does not in itself mandate relief from the floor area and building length restrictions.
The village produced proof that the variance would have an adverse impact upon (1) the residential character of the area, (2) the traffic congestion along the portion of Route 9 traversing Briarcliff Manor, (3) the area flood and drainage conditions and (4) the development of regional shopping areas.[2] Petitioner’s attempts to rebut this evidence were insufficient. It is true that a portion of the subject parcel abutted State Route 9, along which commercial development existed in neighboring towns, but the remainder of the parcel was adjacent to residential property, including 12 acres owned by petitioner which was zoned for residential use. While conditions beyond the boundaries of Briarcliff Manor may have changed, the village itself remained primarily a residential, semirural community, and the portion of Route 9 traversing the village was found to be relatively uncongested. It was further shown that the addition of a large regional shopping center would result in the creation of a traffic hazard on South Highland Avenue. The steep slope of Route 9 near the subject parcel, the proximity of a large shopping center in the adjacent Village of Ossining and the insufficiency in the number of parking spaces in the proposed center were found by the board to be the contributing factors to the resulting traffic hazard and these findings are not challenged by petitioner. Matter of Stevens v Town of Huntington (20 NY2d 352, 356), relied upon by Special Term, is distinguishable because that case involved a situation where the application of the zoning ordinance was alleged to deprive the owner of all reasonable use of his property and it was held that traffic congestion could not be interposed as a rationale supporting virtual confiscation of the property. In the case of an area variance application, traffic problems engendered by the requested variance are a proper consideration (see Matter of Overhill Bldg. Co. v Delany, 28 NY2d 449, 457, supra).
*445 Considerable evidence, also unrebutted, was introduced to demonstrate that the leveling of the property and its conversion into an area almost completely covered by structures and asphalt pavement would result in severe flooding and drainage problems for Briarcliff Manor and for the adjacent Village of Ossining. Both the United States Department of Agriculture and the Westchester County Soil and Conservation Service advised the parties that petitioner’s plans did not adequately provide for the control of storm water and erosion. It should be noted that the board also relied upon the negative regional impact of the proposed shopping center. The record reveals that the neighboring municipalities of Tarrytown and Ossining already possessed regional shopping centers, and county and regional planners have advocated the clustering of retail shopping areas and the strengthening of existing areas rather than their random proliferation. These are proper considerations and serve to insure that property in a community will be used efficiently in light of both local and regional needs (see Berenson v Town of New Castle, 38 NY2d 102, 109). The above-described proof was sufficient to sustain a denial of the variance despite the economic injury entailed in the development of the property as a shopping center.
Having failed to demonstrate that it is entitled to an area variance, petitioner, in order to succeed, must establish that the zoning ordinance as applied amounts to an unconstitutional exercise of the police power because petitioner is deprived of all reasonable use of his property (see Matter of Grimpel Assoc. v Cohalan, 41 NY2d 431; French Investing Co. v City of New York, 39 NY2d 587, 596, app dsmd 429 US 990; 1 Rathkopf, Law of Zoning and Planning [4th ed], § 6.04, pp 6-9-6-13). At the outset, it should be emphasized that when we deal with a challenge to the constitutionality of an ordinance as applied to a particular piece of property, the burden is entirely upon the challenger to demonstrate beyond a reasonable doubt that the property will not yield a reasonable return under any of the uses permitted by the zoning ordinance (1 Anderson, NY Zoning Law and Practice [2d ed], § 2.09, pp 48-52). Thus, a constitutional challenge differs from a review of the denial of an area variance since in the latter case we treat only with the economic impact upon the owner of an area restriction involving a single use actually permitted by the ordinance while in the former case the owner must show that each and every use permitted by the ordinance will *446 fail to yield a reasonable return on the property (see Williams v Town of Oyster Bay, 32 NY2d 78, 81; Matter of Overhill Bldg. Co. v Delany, supra, p 457; Matter of Crossroads Recreation v Broz, 4 NY2d 39, 46; Arverne Bay Constr. Co. v Thatcher, 278 NY 222, 226-227). In the context of constitutional challenges, the Fulling standards relating to area variances have no relevance (see 1 Anderson, op. cit., § 2.09, pp 51-52; Comment, 29 Rutgers L Rev, pp 180-181).
An examination of the record in this case reveals that petitioner’s experts all stated that they did not consider the economic feasibility of developing the subject property in any manner other than petitioner’s own plan for a shopping center or the three plans formulated by the town planner. In short, there was no "dollars and cents” proof that the property was not suitable for residential, industrial or other commercial uses permitted in the General Business B-2 zoning category (see Matter of Crossroads Recreation v Broz, supra). Thus, petitioner has not sustained its burden of proof that the application of the zoning restrictions in this case precludes it from obtaining a reasonable return on its property and amounts to confiscation thereof.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

. This figure is based on the required number of off-street parking units.

. It is not necessary, in sustaining the board’s action, either to rely or pass upon the validity of the village wetlands ordinance and, in any event, this is not a proper proceeding in which to consider the validity of such an ordinance (see Matter of Overhill Bldg. Co. v Delany, supra, p 458).